[No. D047896. Fourth Dist., Div. One. July 20, 2007.]

In re the Marriage of ELENA and AARON FELDMAN.
ELENA FELDMAN, Respondent, v.
AARON FELDMAN, Appellant.

## COUNSEL

Honey Kessler Amado for Appellant.

Stephen Temko for Respondent.

## OPINION

**IRION, J.**—In this marital dissolution proceeding, Aaron Feldman appeals from the trial court's order requiring him to pay sanctions and attorney fees based on his nondisclosure of financial information to respondent Elena Feldman. As we will explain, we conclude that the appeal lacks merit, and accordingly we affirm.

## I

## FACTUAL AND PROCEDURAL BACKGROUND

Aaron and Elena[1] were married in 1969 and separated after 34 years of marriage. Elena filed a petition for dissolution of marriage in August 2003.

During the marriage Aaron created a large number of privately held companies referred to as Sunroad Enterprises (the Sunroad entities). The Sunroad entities are devoted to, among other things, investing in and developing real estate and owning auto dealerships. According to Aaron, his assets are worth in excess of $50 million. The characterization of the Sunroad entities as either separate or community property is an issue in the dissolution proceeding.

As the litigation proceeded, Elena served interrogatories and a request for production of documents on Aaron and conducted depositions of Aaron and employees of the Sunroad entities. Aaron provided responses to interrogatories and a schedule of assets and debts (the Schedule) on November 24, 2003. He subsequently provided updates to the Schedule at the request of Elena's attorney. Aaron also produced a significant number of documents in response to the request for production.

On September 2, 2004, Elena filed an application for an order (1) imposing monetary sanctions against Aaron for a violation of his fiduciary duty to make financial disclosures to her during the dissolution proceedings, and (2) requiring Aaron to pay her attorney fees (the sanctions motion). The sanctions motion was based on Family Code sections 1101, subdivision (g),[2] 2107, subdivision (c), and 271, subdivision (a), which collectively give the trial court authority to order sanctions and the payment of attorney fees for breach of a party's fiduciary duty of disclosure and for conduct which frustrates the policy of promoting settlement.

---

[1] For purposes of clarity, we refer to the parties by their first names and intend no disrespect.

[2] Unless otherwise indicated, all further statutory references are to the Family Code.

Elena's declaration in support of the sanctions motion alleged that Aaron had failed to disclose several different financial transactions, including the purchase of a personal residence through one of his companies, the purchase of a $1 million bond, the existence of a 401(k) account, and the existence of several of the Sunroad entities.

The sanctions motion was taken off calendar while the parties pursued mediation. When the mediation was unsuccessful, Elena renoticed the sanctions motion and submitted a supplemental declaration, which described additional instances of nondisclosure.

Following full briefing and a hearing, the trial court ruled that Aaron breached his fiduciary duty to disclose financial information to Elena, and it ordered Aaron to pay sanctions in the amount of $250,000 and attorney fees of $140,000.[3] As part of its ruling, the trial court found that Aaron intentionally had sought to circumvent the disclosure process and that his conduct had frustrated the policy of promoting settlement. Aaron appeals from the trial court's order.

## II

## DISCUSSION

Our analysis of Aaron's appeal requires us (1) to review the duty of disclosure that applies to spouses involved in dissolution proceedings, and (2) to apply those principles to the several instances of nondisclosure alleged by Elena and cited by the trial court in support of its sanctions order.

### A. *Applicable Statutory Provisions*

We first examine the fiduciary obligations of disclosure that govern the relationship between spouses involved in a dissolution proceeding and the sanctions available for the breach of such obligations.

The fiduciary obligations of spouses to each other are set forth in section 721,[4] and are made specifically applicable during dissolution proceedings by section 1100, subdivision (e). "Each spouse shall act with respect to the other

---

[3] Elena requested that Aaron be sanctioned in the amount of $250,000, and that the trial court impose an additional conditional sanction of $750,000, which would be stayed on the condition that Aaron read the statutory provisions concerning his duty of disclosure and that he immediately, fully and accurately comply with his duty of disclosure. The trial court did not order conditional sanctions.

[4] Section 721, subdivision (b) provides that generally "in transactions between themselves, a husband and wife are subject to the general rules governing fiduciary relationships which

spouse in the management and control of the community assets and liabilities in accordance with the general rules governing fiduciary relationships which control the actions of persons having relationships of personal confidence as specified in Section 721, until such time as the assets and liabilities have been divided by the parties or by a court. This duty includes the obligation to make full disclosure to the other spouse of all material facts and information regarding the existence, characterization, and valuation of all assets in which the community has or may have an interest and debts for which the community is or may be liable, and to provide equal access to all information, records, and books that pertain to the value and character of those assets and debts, upon request." (§ 1100, subd. (e).)

Consistent with these fiduciary obligations, section 2100, subdivision (c) provides that "a full and accurate disclosure of all assets and liabilities in which one or both parties have or may have an interest must be made in the early stages of a proceeding for dissolution of marriage or legal separation of the parties, regardless of the characterization as community or separate, together with a disclosure of all income and expenses of the parties." This disclosure duty is ongoing, as section 2100 provides that *each party has a continuing duty to immediately, fully, and accurately update and augment that disclosure to the extent there have been any material changes* so that at the time the parties enter into an agreement for the resolution of any of these issues, or at the time of trial on these issues, each party will have a full and complete knowledge of the relevant underlying facts." (§ 2100, subd. (c), italics added.)[5]

■ To implement the disclosure obligation, the Family Code requires the service of a preliminary and final declaration of disclosure "[i]n order to provide full and accurate disclosure of all assets and liabilities in which one or both parties may have an interest . . . ." (§ 2103.) Specifically, "[t]he preliminary declaration of disclosure shall set forth with sufficient particularity," to the extent that "a person of reasonable and ordinary intelligence can

---

control the actions of persons occupying confidential relations with each other. This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other. This confidential relationship is a fiduciary relationship subject to the same rights and duties of nonmarital business partners . . . ."

[5] Similarly, section 2102, subdivision (a) states: "From the date of separation to the date of the distribution of the community or quasi-community asset or liability in question, each party is subject to the standards provided in Section 721, as to all activities that affect the assets and liabilities of the other party, including, but not limited to . . . : [¶] (1) The accurate and complete disclosure of all assets and liabilities in which the party has or may have an interest or obligation and all current earnings, accumulations, and expenses, *including an immediate, full, and accurate update or augmentation* to the extent there have been any material changes." (Italics added.)

ascertain [them]," "[t]he identity of all assets in which the declarant has or may have an interest and all liabilities for which the declarant is or may be liable, regardless of the characterization of the asset or liability as community, quasi-community, or separate." (§ 2104, subd. (c)(1).) It also shall include "[t]he declarant's percentage of ownership in each asset and percentage of obligation for each liability where property is not solely owned by one or both of the parties." (§ 2104, subd. (c)(2).)

Section 2107, subdivision (c) requires the trial court to impose monetary sanctions and award reasonable attorney fees if a party fails to comply with any portion of the chapter of the Family Code that deals with a spouse's fiduciary duty of disclosure during dissolution proceedings, i.e., sections 2100 to 2113. The statute provides, "If a party fails to comply with any provision of this chapter, the court shall, in addition to any other remedy provided by law, impose money sanctions against the noncomplying party. Sanctions shall be in an amount sufficient to deter repetition of the conduct or comparable conduct, and shall include reasonable attorney's fees, costs incurred, or both, unless the court finds that the noncomplying party acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (§ 2107, subd. (c).)

Similarly, section 271, subdivision (a) provides the trial court with authority to order the opposing party to pay attorney fees and costs in the nature of a sanction when "the conduct of each party or attorney . . . frustrates the policy of the law to promote settlement of litigation." Specifically the statute provides: "Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed. In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award." (§ 271, subd. (a).) Section 271 "advances the policy of the law 'to promote settlement and to encourage

cooperation which will reduce the cost of litigation.' " (*In re Marriage of Petropoulos* (2001) 91 Cal.App.4th 161, 177 [110 Cal.Rptr.2d 111] (*Petropoulos*).)[6]

### B. *Standard of Review*

"A sanction order under . . . section 271 is reviewed under the abuse of discretion standard. ' "[T]he trial court's order will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order." ' " (*In re Marriage of Burgard* (1999) 72 Cal.App.4th 74, 82 [84 Cal.Rptr.2d 739].) "In reviewing such an award, we must indulge all reasonable inferences to uphold the court's order." (*In re Marriage of Abrams* (2003) 105 Cal.App.4th 979, 991 [130 Cal.Rptr.2d 16].) Although no case law discusses which standard of review we should apply to an order awarding sanctions under section 2107, subdivision (c), because the sanction is similar to that imposed under section 271 as well as similar to a sanction for civil discovery abuses (which are reviewed for abuse of discretion), we will apply an abuse of discretion standard to an order for sanctions under section 2107, subdivision (c). (*See American Home Assurance Co. v. Société Commerciale Toutélectric* (2002) 104 Cal.App.4th 406, 435 [128 Cal.Rptr.2d 430] ["The court's discretion to impose discovery sanctions is broad, subject to reversal only for manifest abuse exceeding the bounds of reason"].)[7]

---

[6] Setting forth additional remedies available when a spouse breaches a fiduciary duty of disclosure, section 1101, subdivision (g) provides that "[r]emedies for breach of the fiduciary duty by one spouse, including those set out in Sections 721 and 1100, shall include, but not be limited to, an award to the other spouse of 50 percent, or an amount equal to 50 percent, of any asset undisclosed or transferred in breach of the fiduciary duty *plus attorney's fees and court costs.*" (Italics added.) In its written order, the trial court cited this provision, along with others, as support for the sanctions award, but cited only section 1101, subdivision (g) as the basis for the attorney fee award. Because we determine that the sanctions award (including the payment of attorney fees) is well supported by the authority provided in section 2107, subdivision (c) and section 271, subdivision (a), we need not, and do not, discuss whether the award of attorney fees might also properly be premised on section 1101, subdivision (g). We may affirm the order on any ground supported by the record. (See *In re Marriage of Mathews* (2005) 133 Cal.App.4th 624, 632 [35 Cal.Rptr.3d 1].)

[7] Aaron argues that the imposition of sanctions should be reviewed under the standards applicable to the award of punitive damages, including the undertaking of a de novo review, because punitive damages, like sanctions, are intended to deter and punish. Aaron has cited no authority for this novel argument, and we are aware of no case law that would support it. We accordingly reject Aaron's argument and apply the well-settled abuse of discretion standard of review. Indeed, Aaron concedes in his reply brief that the abuse of discretion standard of review is applicable. To the extent Aaron is arguing that we should borrow from the United States Supreme Court's case law to determine whether the trial court selected an appropriate dollar amount for the sanctions award, we reject this argument. We rely instead on the text of the relevant statutes to determine whether sanctions were warranted and whether the trial court was within its discretion in setting the amount of the sanction. Specifically, we apply the

To the extent that we are called upon to interpret the statutes relied on by the trial court to impose sanctions, we apply a de novo standard of review. (See *In re Marriage of Hokanson* (1998) 68 Cal.App.4th 987, 992 [80 Cal.Rptr.2d 699].) We review any findings of fact that formed the basis for the award of sanctions under a substantial evidence standard of review. (*In re Marriage of Rossi* (2001) 90 Cal.App.4th 34, 40 [108 Cal.Rptr.2d 270].) " ' " 'In reviewing the evidence on . . . appeal all conflicts must be resolved in favor of the [prevailing party], and all legitimate and reasonable inferences indulged in [order] to uphold the [finding] if possible.' " ' " (*Ibid.*)

## C. *Aaron's Argument Concerning Statutory Interpretation Issues*

Before discussing the particular instances of nondisclosure at issue in this case, we pause to address some of Aaron's arguments concerning the applicable statutory standards.

### 1. *No Injury to the Other Party Is Required for the Trial Court to Impose Sanctions*

Aaron argues that sanctions may not be imposed on a spouse who breaches his fiduciary duty of disclosure if the other party fails to establish any *harm* resulting from the breach. We disagree.

■ According to Aaron, "[t]hematic to the . . . statutes is the presence of some injury to the complaining party as a prerequisite to the remedy." However, we conclude that this argument finds no support in the language of the relevant statutes that authorize the imposition of sanctions here, i.e., sections 2107, subdivision (c) and 271, subdivision (a). Neither statute sets forth any requirement of separate injury to the complaining spouse as a precondition to the imposition of sanctions.

Section 2107, subdivision (c) indicates that sanctions are to be imposed to effectuate *compliance with the laws* that require spouses to make disclosure to each other. (See § 2107, subd. (c) [referring to sanctions imposed to "deter repetition" of conduct that "fails to comply" with the disclosure require- ments].) The statute is not aimed at redressing an actual injury. Section 271,

---

standard set forth in section 2107, subdivision (c), which requires sanctions when a party fails to comply with disclosure obligations, unless the imposition of sanctions would be unjust, and states that the "[s]anctions shall be in an amount sufficient to deter repetition of the conduct or comparable conduct . . . ."

subdivision (a) authorizes sanctions to advance the *policy* of promoting settlement of litigation and encouraging cooperation of the litigants. This statute, too, does not require any actual injury.

Indeed, as expressed in section 2100, subdivision (b), the Legislature has indicated that "[s]ound public policy . . . favors the reduction of the adversarial nature of marital dissolution and the attendant costs by fostering full disclosure and cooperative discovery." In light of this legislatively expressed intention, the authority to impose sanctions for nondisclosure is plainly aimed at effectuating the goal of reducing the adversarial nature of marital dissolution rather than at redressing any *actual harm* inflicted on the complaining spouse.

In addition to relying on the purported "thematic" approach of the applicable statutes, Aaron attempts to rely on case law for his argument that *harm* is a prerequisite to the imposition of sanctions. However, the cases that Aaron cites are not applicable here because they address a different issue—whether a party must show prejudice *when seeking to vacate a judgment of dissolution* on the ground that the other party did not comply with disclosure obligations. (See *In re Marriage of Jones* (1998) 60 Cal.App.4th 685, 695 [70 Cal.Rptr.2d 542] [denying relief to party who sought to have a dissolution judgment vacated for failure of the opposing party to formally comply with certain disclosure requirements because "[s]he failed to show how she was prejudiced"]; *In re Marriage of Brewer & Federici* (2001) 93 Cal.App.4th 1334, 1345 [113 Cal.Rptr.2d 849] (*Brewer & Federici*) [in a case where one party sought to vacate the judgment because the other party did not comply with disclosure obligations, the court cited the principle, established by § 2121, subd. (b), that a party seeking relief from a judgment of dissolution must show that " 'the facts alleged as the grounds for relief materially affected the original outcome' "].) Elena did not seek to vacate a judgment of dissolution; she sought to impose sanctions aimed at deterring future misconduct in the *ongoing* dissolution proceedings. Thus neither the case law that Aaron cites, nor the statutory authority relied on by those cases, apply here.

Because there is no requirement that Elena show harm as a prerequisite to an award of sanctions, we need not and do not analyze whether Elena was harmed by Aaron's failure to disclose.

### 2. *The Imposition of Sanctions Does Not Require Additional Procedural Prerequisites*

Aaron argues that sanctions may not be imposed under section 2107, subdivision (c) unless the complaining party first makes a request for the information that has not been disclosed and then brings either (1) a motion to

compel further response or (2) a motion to preclude evidence on the nondisclosed issue. His argument is based on a misreading of section 2107, and we reject it.

The initial portion of section 2107 provides as follows:

"(a) If one party fails to serve on the other party a preliminary declaration of disclosure under Section 2104 or a final declaration of disclosure under Section 2105, or fails to provide the information required in the respective declarations with sufficient particularity, and if the other party has served the respective declaration of disclosure on the noncomplying party, the complying party may, within a reasonable time, request preparation of the appropriate declaration of disclosure or further particularity.

"(b) If the noncomplying party fails to comply with a request under subdivision (a), the complying party may do either or both of the following:

"(1) File a motion to compel a further response.

"(2) File a motion for an order preventing the noncomplying party from presenting evidence on issues that should have been covered in the declaration of disclosure."

 Independent of these remedies, section 2107, subdivision (c) states that "[i]f a party fails to comply with any provision of this chapter [i.e., sections 2100 to 2113], the court shall, in addition to any other remedy provided by law, impose money sanctions against the noncomplying party." The terms of the statute simply do not require that before seeking sanctions for nondisclosure a party (1) seek further disclosure and (2) bring a motion to either compel further responses or preclude evidence.[8]

Thus, sanctions were available here despite the fact that Elena did not avail herself of the remedies set forth in subdivisions (a) and (b) of section 2107.

D. *Aaron's Nondisclosures*

We next review the nondisclosures that Elena alleged as the basis for the sanctions motion and that the trial court relied on in ordering sanctions.

---

[8] According to Aaron, *Elden v. Superior Court* (1997) 53 Cal.App.4th 1497, 1510 [62 Cal.Rptr.2d 322] "suggests that the remedies [in section 2107] are available to the complying party in the order presented in the statute." The availability of sanctions was not at issue in *Elden*, and we do not perceive *Elden* as advancing any such interpretation of section 2107. Moreover, as we have explained, such an interpretation would, in any event, find no support in the statutory language.

## 1. *The Israeli Bond*

On November 24, 2003, Aaron served the Schedule. It is undisputed that the Schedule failed to list a $1 million bond that Aaron personally had purchased from the Israeli government in October 2003 (the Israeli bond).

Aaron signed the agreement to acquire the Israeli bond on July 10, 2003, the bond was issued on October 8, 2003, and Aaron was notified of that fact by a letter dated October 27, 2003. Thus Aaron clearly knew about the Israeli bond when he served the Schedule, but he did not list it as one of his assets.

Further, the bond was purchased with borrowed funds. According to Aaron, he "borrowed $1,000,000 from Bank Leumi, USA; purchased an Israeli bond with the proceeds; and, in turn, assigned to Bank Leumi USA as collateral for the loan." Aaron also did not disclose the loan from Bank Leumi on the Schedule as one of his debts.

Not only did Aaron fail to disclose the Israeli bond and the Bank Leumi loan on the Schedule, he also did not timely produce *documents* about the transaction. Although Elena served Aaron with a request for production asking for all bond certificates and any documents evidencing loans, Aaron produced no documents concerning the Israeli bond or the corresponding loan from Bank Leumi either in his initial October 2003 production or in his supplemental production in January 2004. In addition, during his January 28, 2004 deposition, in response to a direct question on the subject, Aaron stated that he had no personal loans from Bank Leumi.

Elena's attorney sent a letter to Aaron's attorney on February 20, 2004, requesting that Aaron update the Schedule. Aaron replied on February 27, 2004, with a notice of correction to the Schedule. Among other things, the corrections identified the Israeli bond, which Aaron claimed was acquired in December 2003,[9] and the $1 million loan payable to Bank Leumi. On March 1, 2004, Aaron produced documents relating to the Israeli bond and the Bank Leumi loan.

---

[9] Contrary to Aaron's representation in his notice of corrections to the Schedule, subsequently produced documents show that the Israeli bond was acquired in October 2003, not December 2003, which was *before* Aaron served the Schedule on November 24, 2003. The trial court might reasonably infer that Aaron's claim that he acquired the bond in December 2003 was a deliberate misstatement calculated to hide the fact that in November 2003 he *could have* identified the Israeli bond on the Schedule. This conduct would further support an award of sanctions.

In her sanctions motion Elena argued that Aaron's failure to disclose the Israeli bond and the Bank Leumi loan in the Schedule, his failure to produce corresponding documents, and his failure to disclose the Bank Leumi loan during his deposition was a breach of his duty under section 2102, subdivision (a)(1), which requires "[t]he accurate and complete disclosure of all assets and liabilities in which the party has or may have an interest or obligation and all current earnings, accumulations, and expenses, including an immediate, full, and accurate update or augmentation to the extent there have been any material changes." The trial court agreed, concluding that the nondisclosure of the Israeli bond was part of a "clear pattern that [Aaron] has no intentions of complying with the policy . . . that this information is to be shared from the very beginning." The trial court also found that Aaron's conduct was intentional, that he was "trying to circumvent the process, hide the ball," and it stated that "[g]o fish, you figure it out, is not acceptable."

On appeal Aaron argues that "[a]s the bond was purchased with Bank Leumi *loan* proceeds and as the loan was to be paid off with the *bond* proceeds, the bond and loan were a self-contained, symbiotic package with *zero* effect on Aaron's net worth." He argues that "[g]iven the off-setting relationship[, he] forgot to list either the bond or the debt on his November 24, 2003 Schedule of Assets and Debts." Aaron also claims that he "misspoke" when he stated at his deposition that he had no personal debt to Bank Leumi.

To the extent that Aaron is attempting, through these statements, to excuse his nondisclosure, we conclude that Aaron's position lacks merit. The statutory policy in favor of disclosure contains no exception for debts and assets that offset each other, and Aaron has cited no authority to support such an exception. Instead, Aaron was required to provide a "complete disclosure of all assets and liabilities." (§ 2102, subd. (a)(1).)[10] Further, the trial court explained that in light of the other nondisclosures detailed in the sanctions motion, it was rejecting Aaron's explanation that the failure to disclose the Israeli bond and the Bank Leumi loan was a mere oversight. The trial court's inference is reasonable, and in light of the standard of review we will not disturb it.

### 2. *The Calumet Avenue Property*

The next nondisclosed item identified in the sanctions motion was Aaron's acquisition in early 2004, through a newly created business entity, of a multimillion-dollar home that became his personal residence.

---

[10] As is required of any litigant, Aaron was also required to respond in good faith to Elena's request for production of documents by producing all relevant documents and to refrain from giving false answers in his deposition testimony, which he failed to do with respect to the Israeli bond and the Bank Leumi loan.

The factual background to this issue begins with a letter sent by Elena's attorney to Aaron's attorney on March 1, 2004, specifically asking "whether [Aaron] has acquired, or is in the process of acquiring, any interest in any assets or incurred any obligations . . . ." This letter followed up on a February 20, 2004 letter, which asked "if there have been any financial changes with regard to [Aaron], including the acquisition of any new interests in properties, either personal or business in nature . . . ."

On April 1, 2004, Aaron's attorney sent a letter stating that "[Aaron], along with his son Dan, recently moved to a residence on Calumet Street [sic] in the Birdrock area of La Jolla. [Aaron] is leasing the residence for $15,000 a month. Otherwise, we are not aware of any substantial changes that warrant an update of [Aaron's] Income and Expense Declaration or further corrections to his Schedule of Assets and Debts."

However, the next day, April 2, 2004, in response to questions asked during the deposition of Frederick Tronboll, a senior vice-president for Sunroad Holding, Inc. (Sunroad Holding), Elena learned that an entity created by Sunroad Holding—Calumet Real Estate Holdings, LLC—had purchased a residence on Calumet Avenue in La Jolla in a cash transaction for $5,797,500.[11]

The contract to purchase was signed on February 3, 2004, and the transaction closed on March 12, 2004. Calumet Real Estate Holdings, LLC, is 100 percent owned by Sunroad Holding, which in turn is 100 percent owned by Aaron. The funds for the purchase were originally provided by Sunroad Auto Holding, which is 100 percent owned by Sunroad Holding, and thus ultimately 100 percent owned by Aaron. Aaron pays a monthly lease of $15,000 to Calumet Real Estate Holdings, LLC, which transfers the funds to Sunroad Holding, which in turn repays Aaron's company Sunroad Auto Holding for the funds used to purchase the property. In his September 2004 income and expense declaration, Aaron disclosed for the first time that he *personally* pays the property taxes, insurance and maintenance on the Calumet Avenue property.

In short, Aaron caused one of the Sunroad entities to buy the Calumet Avenue property, he made the property into his personal residence, and he funded the purchase with funds that, because they came from one of the

---

[11] According to Aaron's briefing, almost three months later, on June 28, 2004, Aaron produced documents about the transaction.

Sunroad entities, could possibly be characterized as community property. However, Aaron told Elena in the April 1, 2004 letter only that he was leasing a residence for $15,000 per month.

Elena argued that Aaron's selective disclosure of the nature of the transaction involving the Calumet Avenue property was inconsistent with Aaron's fiduciary obligation toward her. The trial court agreed, citing the transaction involving the Calumet Avenue property as one example of Aaron's pattern of nondisclosure.

Aaron argues that he complied with his fiduciary obligation because he "disclosed the acquisition of the Calumet Avenue property within one month of the close of escrow." We disagree. Significantly, Aaron did *not* disclose the transaction; instead Elena stumbled upon the fact of the transaction while deposing Tronboll. Indeed, Elena may never have found out about the transaction had her attorney not asked the appropriate question of Tronboll. Based on the content of the April 1, 2004 letter, the trial court could reasonably conclude that contrary to his fiduciary duty of disclosure, Aaron was attempting to *hide* or *delay* Elena's discovery of the fact that he had used possible community property assets to buy a house in which he was residing. Indeed, the trial court could reasonably assume that absent Elena's discovery of the true facts, Aaron intended to maintain that he was merely leasing his residence from an unrelated third party. Aaron's conduct was inconsistent with his duty under section 1100, subdivision (e), which gave him an obligation "to make full disclosure to the other spouse of all material facts and information regarding the existence, characterization, and valuation of all assets in which the community has or may have an interest."

In at least two separate respects, the transaction involving the Calumet Avenue property was a "material fact," giving Aaron a duty to disclose it under section 1100, subdivision (e).

First, Elena is claiming that the Sunroad entities are community assets. In order for Elena to trace those community assets, she needs to obtain information about whether, postseparation, Aaron used any of those alleged community assets to capitalize new companies. Thus, the fact that Aaron took approximately $6 million from one of the other Sunroad entities and used it to capitalize Calumet Real Estate Holdings, LLC (and to purchase a personal

residence in the name of that company), is a material fact concerning the community assets. Aaron accordingly had a duty of candor regarding that transaction.

Second, in the division of community property, Elena may attempt to claim reimbursement for any postseparation benefit that Aaron obtained from the use of community property. (See *In re Marriage of Watts* (1985) 171 Cal.App.3d 366, 374 [217 Cal.Rptr. 301].) The knowledge that Aaron is living in a house that was bought with alleged community assets would be material information to Elena because it would allow her to evaluate whether, postseparation, Aaron has used community property for his personal benefit under circumstances that would give rise to an obligation to reimburse the community.[12]

In light of the facts in the record, we conclude that the trial court did not abuse its discretion in concluding that Aaron's lack of candor about the transaction involving the Calumet Avenue property was part of a pattern of nondisclosure that warranted the imposition of sanctions.[13]

---

[12] Aaron argues that he did not have to disclose the transaction involving the Calumet Avenue property because the purchase of real estate is the type of transaction that the Sunroad entities carry out in the ordinary course of business, and that, in fact, during the marriage, he had purchased the family's personal residences through the Sunroad entities. We reject Aaron's argument. As we have explained, the transaction involving the Calumet Avenue property is material to this litigation because (1) Elena must know about it to be able to trace alleged community assets and (2) Elena must know about it to determine if the community is entitled to reimbursement. On these two grounds, the transaction involving the Calumet Avenue property is distinguishable from a transaction in the ordinary course of business of the Sunroad entities, and Aaron breached his duty to disclose by attempting to hide its existence in the April 1, 2004 letter.

[13] Relying on the fact that section 2102, subdivision (a)(1) and section 2104, subdivision (c)(1) call upon a spouse to disclose only "assets [in which the spouse] has or may have an interest," Aaron argues at length that he was not obligated to disclose the transaction involving the Calumet Avenue property because that property was an asset of the Sunroad entities, and was thus not one of his personal assets. Further, he argues that the trial court and Elena have confused Aaron as an *individual* with Aaron as a *shareholder* of the Sunroad entities. We acknowledge the distinction between a shareholder and a corporation, and we recognize that a listing of the *corporation's* assets need not be provided when section 2102, subdivision (a)(1) and section 2104, subdivision (c) call for a party to disclose "assets [in which the party] has or may have an interest." However, different statutory provisions obligate a spouse to disclose information concerning all *community* assets, not just assets directly held by the spouse as an individual. Specifically, under section 1100, subdivision (e), Aaron had an obligation "to make full disclosure to the other spouse of all material facts and information regarding the existence, characterization, and valuation of all assets in which the community has or may have an interest." The transaction involving the Calumet Avenue property is clearly relevant to understand "the existence, characterization, and valuation of all assets in which the community has or may have an interest." (*Ibid.*)

### 3. *401(k) Account*

In the Schedule, Aaron stated that he did not have any retirement or pension assets. In response to Elena's request for production of documents relating to Aaron's pension plans and retirement and investment programs, Aaron produced no responsive documents, either in his initial production or in his January 2004 supplemental production. Similarly, in response to form interrogatories propounded by Elena, Aaron stated in November 2003 that he had no interest in any retirement plan.

However, during a July 23, 2004 deposition, when Aaron was asked why, according to his disclosures, he did *not* participate in the Sunroad entities' 401(k) plan, Aaron stated that he probably *did* participate. At Elena's request, Aaron subsequently produced information about his 401(k) account, showing that he had an account in the amount of $8,679.20.

In the sanctions motion, Elena argued that Aaron's failure to disclose his 401(k) account was a breach of his fiduciary duty to disclose his assets. Aaron conceded that he had not disclosed the 401(k) account and that he did indeed receive statements for the account, but he explained that he did not review the statements and that no contribution had been made to the account for 12 years. The trial court agreed with Elena that the failure to disclose the 401(k) account was another instance of Aaron's breach of his duty of disclosure, and it cited the omission of the 401(k) account as part of Aaron's pattern of misconduct.

On appeal Aaron argues that he did not breach his fiduciary duty to Elena by not disclosing the 401(k) account, because Elena had been secretly copying financial documents during their marriage and as a result she had copies of certain account statements from 1998 through 2000 for the 401(k) account, which she produced to Aaron on April 29, 2004.

We do not view this fact as in any way exonerating of Aaron's failure to disclose the information about the 401(k) account on the Schedule or to produce documents concerning the account in response to Elena's request for production. The 401(k) account is clearly one of Aaron's assets and may be community property. He was thus required to disclose it in the Schedule and to disclose it upon request from Elena. (See §§ 2102, subd. (a)(1), 2104, subd. (c)(1), 1100, subd. (e), 721, subd. (b)(2).) "[A] spouse who is in a superior position to obtain records or information from which an asset can be

valued and can reasonably do so must acquire and disclose such information to the other spouse" and should not expect the spouse who is not in a superior position to search for the information. (*Brewer & Federici, supra,* 93 Cal.App.4th at p. 1348.) If Elena had not, without Aaron's knowledge, obtained statements from the 401(k) account, Elena may *never* have found out about the account, and her attorney may not have known to ask Aaron about this asset during the deposition.

We note that in November 2003 when Aaron omitted the 401(k) account from the Schedule, and in January 2004 when he omitted the account statements from his supplemental document production, Aaron likely did *not* know that Elena had any account statements. In contrast, at the time of his deposition in July 2004 when he admitted to the 401(k) account, Aaron *did* know that Elena had the documents, as she had produced them in April 2004. The trial court might reasonably have inferred that Elena's demonstrated knowledge of the 401(k) account was what prompted Aaron to finally admit to the existence of the asset and that Aaron's conduct was not consistent with his fiduciary duty of disclosure.[14]

██ In sum, Aaron had a fiduciary duty to disclose the existence of the 401(k) account on the Schedule in the first place without prodding from Elena and to produce relevant documents upon Elena's request. The trial court reasonably concluded that Aaron breached that duty by not disclosing the existence of the 401(k) account until July 2004 in response to an inquiry during his deposition.

### 4. *The Addition of New Companies*

As another basis for its conclusion that Aaron had engaged in a pattern of nondisclosure, the trial court cited "the addition of new companies." Although the trial court could have been more clear about the transactions to which it was referring, our review of the record reveals several instances of documented nondisclosure of new Sunroad entities that the trial court reasonably could have relied upon to support its decision to order sanctions.

---

[14] Aaron also appears to believe that in light of his wealth, the $8,679.20 in the 401(k) account was immaterial and thus he did not breach a duty to Elena by not disclosing it. We reject this argument. As the trial court pointed out, the nondisclosure of the 401(k) account was part of a *pattern* of nondisclosure. Although the amount of the account may not be significant standing alone, the trial court was within its discretion to conclude that taken together with Aaron's other nondisclosures, Aaron's nondisclosure of the 401(k) account demonstrated a pattern of misconduct that justified the imposition of sanctions.

### a. *Inmobiliaria Camino del Sol*

Two of the Sunroad entities owned by Aaron created the Mexican subsidiary Inmobiliaria Camino del Sol, S de R.L. de C.V. (Inmobiliaria) at some point in 2003.[15] Inmobiliaria was formed to own land for an auto dealership in Mexico City. Sunroad Auto Holding Corporation loaned $2.52 million to Inmobiliaria, evidenced by an October 23, 2003 promissory note signed by Aaron.

In October 2003 and January 2004, Aaron responded to Elena's request for production which sought, among other things, (1) articles of incorporation and similar documents for the Sunroad entities and (2) evidence of any loans to the Sunroad entities. Aaron did not produce any documents concerning Inmobiliaria.

In February 2004, Elena's attorney asked "if there have been any financial changes with regard to [Aaron], including the acquisition of any new interests in properties, either personal or business in nature." In June 2004, Elena's attorney asked if there had been "any changes to [Aaron's] income or assets, whether personally or through Sunroad Holding Corporation or any other subsidiary corporation" and whether "[Aaron] has created any new corporations or subsidiary corporations." Despite these requests, Aaron did not disclose the existence of Inmobiliaria or the loan to it.

Further, until he produced a copy of the promissory note in August 2004, Aaron did not produce documents concerning Inmobiliaria or evidencing the $2.52 million loan to it. The existence of Inmobiliaria was also not disclosed on the organizational chart of the Sunroad entities that Aaron produced in December 2003, even though it clearly existed at that time.[16]

Thus, the trial court could reasonably conclude that by failing to disclose the information about Inmobiliaria when specifically requested to do so by Elena, Aaron breached his duty under section 1100, subdivision (e) "to make full disclosure to the other spouse of all material facts and information

[15] Aaron makes conflicting statements about the date on which Inmobiliaria was formed. Aaron's appellate briefing states that the company was formed in October 2003, but a letter in the record written by Aaron's attorney states that the company was incorporated on January 22, 2003.

[16] Aaron points out that in response to questions during his May 2004 deposition, he stated that he had formed an entity to invest in Mexican real estate for an auto dealership. In our view, this fact does not establish that Aaron complied with his fiduciary duty of disclosure. The information was offered only upon exact questioning by Elena's attorney, and even then, Aaron was not able to provide many of the relevant details, including the name of the entity. Moreover, as we have explained, the information about Inmobiliaria was available months before the May 2004 deposition.

regarding the existence, characterization, and valuation of all assets in which the community has or may have an interest." As we have explained, Elena had an interest in ascertaining and valuing all of the Sunroad entities, and in tracing any transfer of capital from the Sunroad entities to newly created entities. Because Aaron failed to disclose the existence of Inmobiliaria and the $2.52 million loan made to it by another Sunroad entity, Aaron did not comply with his duty of disclosure.

### b. *Entities Appearing on Later Organizational Charts*

In Elena's July 2005 supplemental declaration in support of the sanctions motion, she described several new Sunroad entities that she had learned of in January 2005, although they were formed several months earlier.

On January 25, 2005, Aaron produced corporate organizational charts for the Sunroad entities dated December 31, 2004. Despite the fact that Aaron has admitted that new organizational charts are created on a quarterly basis, this was Aaron's first production of organizational charts since December 2003, when he produced organizational charts dated September 30, 2003.

Upon reviewing the new charts, Elena noticed that nine new entities were listed. Several rounds of correspondence between Elena's and Aaron's attorneys followed between January 28, 2005, and May 16, 2005, as Elena attempted to obtain detailed information about the new entities. Like Inmobiliaria, several of the companies were associated with automobile dealerships in Mexico. Another two of the new entities owned real property in Chula Vista, and still another owned land in San Diego. Six of the companies were incorporated in June or July 2004, one was incorporated in August 2004, one was incorporated in January 2005, and one was still in the process of being incorporated as of February 2005.

Thus, several of these new entities had been in existence for several months before Aaron disclosed their existence by producing updated organizational charts in January 2005.

As we have explained, Aaron was under a duty, among other things, to give "an immediate, full, and accurate update or augmentation to the extent there have been any material changes" as to his assets and liabilities (§ 2102, subd. (a)(1)). Under section 1100, subdivision (e), Aaron had an obligation "to make full disclosure to the other spouse of all material facts and information regarding the existence, characterization, and valuation of all assets in which the community has or may have an interest." (See also § 721, subd. (b)(2) [requiring a spouse to provide upon request "true and full information . . . affecting any transaction which concerns the community

property"].) Further, based on the inquiry of Elena's attorneys in June 2004 as to whether "[Aaron] has created any new corporations or subsidiary corporations," Aaron knew that Elena was interested in receiving updates concerning the creation of any new Sunroad entities.

On these facts, the trial court was within its discretion to conclude that Aaron's tardy disclosure of the new entities was another instance of Aaron's pattern of noncompliance with the statutory policy of disclosure.

Aaron argues that he was not required to disclose the existence of Inmobiliaria, the $2.52 million loan, or the creation of the new entities, because they were "standard business transaction[s]." Specifically, Aaron disputes that "every transaction" of a business must be reported under section 2102, "even when the transactions are within the 'ordinary course of business' of the reported asset."

Aaron relies on section 2102 for his argument. That section provides:

"(a) From the date of separation to the date of the distribution of the community or quasi-community asset or liability in question, each party is subject to the standards provided in Section 721, as to all activities that affect the assets and liabilities of the other party, including, but not limited to, the following activities:

"(1) The accurate and complete disclosure of all assets and liabilities in which the party has or may have an interest or obligation and all current earnings, accumulations, and expenses, including an immediate, full, and accurate update or augmentation to the extent there have been any material changes.

"(2) The accurate and complete written disclosure of any investment opportunity, business opportunity, or other income-producing opportunity that presents itself after the date of separation, but that results from any investment, significant business activity outside the ordinary course of business, or other income-producing opportunity of either spouse from the date of marriage to the date of separation, inclusive. The written disclosure shall be made in sufficient time for the other spouse to make an informed decision as to whether he or she desires to participate in the investment opportunity, business, or other potential income-producing opportunity, and for the court to resolve any dispute regarding the right of the other spouse to participate in the opportunity. In the event of nondisclosure of an investment opportunity, the division of any gain resulting from that opportunity is governed by the standard provided in Section 2556.

"(3) The operation or management of a business or an interest in a business in which the community may have an interest.

"(b) From the date that a valid, enforceable, and binding resolution of the disposition of the asset or liability in question is reached, until the asset or liability has actually been distributed, each party is subject to the standards provided in Section 721 as to all activities that affect the assets or liabilities of the other party. Once a particular asset or liability has been distributed, the duties and standards set forth in Section 721 shall end as to that asset or liability."

 Despite Aaron's argument to the contrary, this statute does not contain an exception that exempts a spouse from having to disclose transactions "in the ordinary course of business." Aaron points out that section 2102, subdivision (a)(2) refers to disclosures that must be made only when "outside the ordinary course of business." However, that provision describes the circumstances in which one spouse must disclose a postseparation business opportunity to the other spouse *prior* to the transaction so that the spouse may decide whether to participate in the opportunity. Under the statute, a spouse is required to give *prior* written disclosure with respect to a "significant business activity *outside the ordinary course of business*." (*Ibid.*, italics added.)

The issue here is not whether Aaron was required to disclose the various activities of Sunroad Holdings *before* they occurred. Elena's motion for sanctions is not based on Aaron's failure to disclose business opportunities *before* the Sunroad entities took advantage of them. Instead, the request for sanctions was warranted because he failed, even when Elena made it clear that she desired the information, "to make full disclosure to the other spouse of all material facts and information regarding the existence, characterization, and valuation of all assets in which the community has or may have an interest." (§ 1100, subd. (e).)[17] As the spouse involved in running the Sunroad entities, Aaron was in a superior position to obtain information about those entities and was thus obligated to disclose material information regarding them to Elena.[18]

---

[17] Citing *Gale v. Superior Court* (2004) 122 Cal.App.4th 1388, 1393 [19 Cal.Rptr.3d 554], Aaron argues that he was not required to disclose the business dealings of the Sunroad entities that he made in "the ordinary course of business." *Gale* is not on point. It addresses whether an automatic restraining order prevents a spouse who runs a family-owned real estate investment business from selling one of the properties in the " 'usual course of business.' " (*Ibid.*) Here, the issue is not whether Aaron was authorized to conduct ordinary business on behalf of the Sunroad entities, it was whether Aaron was required to *disclose* such business transactions, immediately, fully and accurately, to the extent they impacted his assets and liabilities.

[18] It is significant that the Sunroad entities are privately held corporations. Because of their privately held status, information regarding them is not available to Elena, but it is available to

■ We agree with Aaron that as a matter of common sense, a spouse who runs a business is not under a duty to sua sponte update every *insignificant* occurrence in the operation of a business. We note as well that the statutes refer to the immediate disclosure of "material changes" (§§ 2100, subd. (c), 2102, subd. (a)) and "material facts and information" (§ 1100, subd. (e)). However, as we will explain, the facts here clearly justify the trial court's exercise of its discretion to conclude that the existence of Inmobiliaria, the $2.52 million loan, and the creation of the entities shown on the December 31, 2005 organizational chart were items that Aaron had a duty to promptly disclose.[19]

Significantly, with respect to the creation of the new entities, because Elena specifically asked about the creation of any new corporations or subsidiary corporations in June 2004, Aaron was on notice that the creation of the entities reflected on the December 31, 2004 organizational charts was a significant event that he should promptly disclose. Further, any spouse seeking to ascertain the value of a community business and to trace community assets would reasonably need to know of the existence of all of the business entities existing at the time of separation and the creation of any new postseparation entities. With respect to Inmobiliaria, Elena served a request for production seeking documents that encompassed evidence of the creation of new Sunroad entities and any loans made by those entities. These requests put Aaron on notice that he had a duty to disclose the information.[20]

---

Aaron as a shareholder and manager of the company, giving him a duty to obtain that information in carrying out his duty to provide disclosure about community assets. (See *Brewer & Federici, supra,* 93 Cal.App.4th at p. 1348 [the spouse in a superior position to obtain information has a duty to do so]; *In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 34 [120 Cal.Rptr.2d 707] [because the value of the stock of a public company was publicly available information, spouse did not breach duty by failing to disclose the value].)

[19] Aaron argues that because he personally did not own any of the Sunroad Holding assets, including its numerous subsidiary entities, he did not have a duty to disclose their existence. Although acknowledging that he was the 100 percent owner of Sunroad Holding and the other Sunroad entities, Aaron argues that because section 1100, subdivision (d) "allows the spouse who is managing and controlling the asset to act alone in all transaction[s] except those which would result in a liquidation of the business[,] Aaron's conduct [in not disclosing some of Sunroad's assets] was consistent with his fiduciary duties." We reject this argument. The issue of which assets must be *disclosed* under section 2102 is a distinct issue from whether one spouse is permitted exclusive *management and control* of the assets of a business owned by the community. Section 2102, subdivision (a)(1) requires "[t]he accurate and complete disclosure of all assets and liabilities in which the party has or may have an interest or obligation" and imposes a duty to immediately, fully and accurately update the disclosure upon a material change. Aaron breached that duty of disclosure when, despite Elena's request for the information, he failed to disclose documents concerning Inmobiliaria and the formation of new Sunroad entities.

[20] Aaron argues that he has complied with his disclosure obligations because he has produced extensive documentation, and that the parties have hired a joint appraiser regarding the value of Sunroad businesses and a joint financial expert to determine monies available for

### 5. Other Instances of Nondisclosure Not Cited by the Trial Court

In support of the sanctions motion, Elena cited several other alleged instances of nondisclosure.[21] On appeal the parties have briefed whether those alleged nondisclosures warranted the imposition of sanctions. However, because the trial court did not cite those items as the basis on which it was exercising its discretion to impose sanctions, we do not analyze whether they support the trial court's ruling. Instead, we have limited our analysis to whether, under the applicable standard of review, the instances of nondisclosure cited by the trial court support its order requiring Aaron to pay sanctions and attorney fees.

### E. Attorney Fees

We next discuss Aaron's challenges to the trial court's attorney fee award.

#### 1. The Award of Fees Under Section 271 Prior to the Conclusion of the Litigation

As we have explained, attorney fees are statutorily authorized in this case either under (1) section 2107, subdivision (c) in connection with the imposition of sanctions for violation of disclosure obligations; or (2) section 271, subdivision (a), based on the trial court's finding that Aaron's acts of nondisclosure frustrated the statutory policy to promote settlement.

Aaron contends that to the extent the award of attorney fees was premised on section 271, subdivision (a), that award was improper because attorney fees may not be ordered under section 271, subdivision (a) until the end of the lawsuit.

In support of his argument, Aaron cites *In re Marriage of Freeman* (2005) 132 Cal.App.4th 1, 6 [33 Cal.Rptr.3d 237], and *In re Marriage of Quay* (1993)

---

support. These facts do not persuade us that the trial court abused its discretion in imposing sanctions. First, the trial court reasonably concluded that the documentation Aaron provided did not sufficiently fulfill his fiduciary duty of disclosure because the undisclosed items noted by the trial court were not contained in that production, namely, information about the Calumet Avenue property, information about the Israeli bond, information about the 401(k) account, and information about Inmobiliaria. Second, the parties retained the appraiser and financial expert *after* most of the conduct by Aaron that gave rise to the sanctions, and *after* Elena filed the application for sanctions. Thus, Aaron's agreement to the appraiser and financial expert is not relevant to whether his conduct during the relevant time frame warranted the imposition of sanctions.

[21] For example, Elena complained that Aaron did not disclose the subsidiaries of Sunroad Holding on the Schedule, that he did not disclose several other business transactions of the Sunroad entities, that he did not disclose that he converted the Sunroad entities from C corporations to S corporations, and that he did not produce a draft appraisal report concerning the value of the Sunroad entities.

18 Cal.App.4th 961, 970 [22 Cal.Rptr.2d 537]. *Quay* concerned the predecessor statute to section 271 (Civ. Code, former § 4370.6). In the context of rejecting an argument that the attorney fee sanction was improper because "the only attorney's fees before the court were incurred after [the party's] wrongful conduct," *Quay* stated that "[t]he statute, we think, contemplates assessing a sanction at the end of the lawsuit, when the extent and severity of the party's bad conduct can be judged." (*Quay*, at p. 970.) In the course of deciding that a trial court could require the payment of attorney fees incurred on appeal under section 271, *Freeman* quoted this language from *Quay*. (*Freeman*, at p. 6.)

Thus, neither *Quay* nor *Freeman* dealt with the issue that we consider here, i.e., whether a trial court must wait until the end of the lawsuit to assess attorney fees as sanctions under section 271. We accordingly do not rely on those authorities in assessing Aaron's argument. Instead, in conducting our analysis we rely on the language of the statute.

■ The text of section 271 contains no requirement that the trial court impose the sanction at the end of the lawsuit. Indeed, the only procedural requirement in the statute is that an award of attorney fees and costs as a sanction may be imposed "only after notice to the party against whom the sanction is proposed to be imposed and opportunity for that party to be heard." (§ 271, subd. (b).) Further, as we have stated, section 271 is meant to "advance[] the policy of the law 'to promote settlement and to encourage cooperation which will reduce the cost of litigation.' " (*Petropoulos, supra*, 91 Cal.App.4th at p. 177.) As a matter of logic, to promote cooperation a trial court must be able to apply sanctions *during the course of the litigation* when the uncooperative conduct arises in order to encourage better behavior as the litigation progresses.

We accordingly conclude that based on the statutory language and the express purpose of section 271, a trial court may impose sanctions under section 271 before the end of the lawsuit.

### 2. *Aaron Has Waived the Argument that Elena's Attorney Fees Were Not Reasonable and Necessary*

Aaron argues that the trial court abused its discretion in setting the amount of attorney fees at $140,000, because those fees were not shown to be "reasonable and necessary."[22]

---

[22] Aaron bases his argument for a "reasonable and necessary" standard by citing the attorney fee provision set forth in section 2032 and cases decided under that provision, including *In re Marriage of Keech* (1999) 75 Cal.App.4th, 860, 869–870 [89 Cal.Rptr.2d 525], and *In re Marriage of Braud* (1996) 45 Cal.App.4th 797, 827 [53 Cal.Rptr.2d 179]. We note that the trial

We reject Aaron's argument because he failed to raise a timely objection in the trial court. Elena submitted a series of declarations in support of her request for attorney fees as part of the sanctions motion. Although Aaron had ample opportunity to do so prior to or during the hearing on the sanctions motion, Aaron did not object to the amount of the fees that Elena was seeking. He did not argue that Elena had failed to show that the fees were reasonable or necessary, and he raised no other objection to the amount of the fees sought or to the documentation that Elena submitted in support of her fee request.[23] " 'An appellate court will not consider procedural defects or erroneous rulings where an objection could have been, but was not, raised in the court below.' " (*Children's Hospital & Medical Center v. Bonta´* (2002) 97 Cal.App.4th 740, 776 [118 Cal.Rptr.2d 629]; see also *Robinson v. Grossman* (1997) 57 Cal.App.4th 634, 648 [67 Cal.Rptr.2d 380] [party that failed to object to the trial court that the opposing party's attorney fees were not sufficiently documented waived the right to object on appeal to the amount of the fee award].) We accordingly reject Aaron's challenge to the amount of the fees awarded to Elena.[24]

### F. *The Trial Court Was Not Required to Issue a Statement of Decision*

At the conclusion of the trial court's oral ruling, Aaron made a request for a statement of decision under Code of Civil Procedure section 632. The trial

---

court did not rely on section 2032 in awarding attorney fees, and Elena did not move for attorney fees based on that section.

[23] At the trial court's request, after the trial court orally delivered its ruling, Elena submitted a proposed written order and findings (proposed order). Aaron subsequently objected to Elena's proposed order on the ground that it described the $140,000 fee award as "attorney fees *for this Motion*." (Italics added.) Aaron argued that this wording was wrong because Elena had not sufficiently established that $140,000 in fees were incurred in litigating the sanctions motion. We do not believe that, through this objection, Aaron preserved for appeal the issue of whether Elena established that her attorney fees were reasonable and necessary. Aaron's objection was to the wording of Elena's proposed order, not to the substance of the trial court's decision, and Aaron was not, through the objection, seeking relief from the trial court's ruling. Moreover, the objection would not have been a *timely* objection to the amount of the fees claimed by Elena, as it was made *after* the fee application was litigated.

[24] We note that Aaron makes no argument that the attorney fee award should be reversed because it imposed an unreasonable financial burden on him. Aaron does, however, take issue with the amount of the $250,000 sanction, arguing that it was excessive because "there is nothing in the evidence to establish that Aaron could reasonably pay this amount." We reject this argument based on evidence of Aaron's financial condition contained in the record, which shows, among other things, that as of November 2004 he had in excess of $50 million in assets, over $300,000 available to him in deposit accounts, over $3.5 million invested in the stock market, received over $2 million from dividends and loan repayments in 2004, and received on average over $150,000 per month from partnership distributions. Based on these facts, the trial court could reasonably conclude that Aaron had the means to pay the sanctions award, and an award of $250,000 was "in an amount sufficient to deter repetition of the conduct or comparable conduct." (§ 2107, subd. (c).)

court stated at the conclusion of the hearing that it did not think that Aaron was entitled to a statement of decision. In a minute order issued several days later, the trial court clarified that it was denying the request for a statement of decision because "[s]tatements of decision are not required for orders made after hearing on motions or orders to show cause."

In subsequent correspondence with the trial court, Aaron's attorney stated that "[Aaron] agrees that a statement of decision is not required," but he nevertheless asked the court to "exercise its discretion to issue a formal statement of decision." The trial court thereafter issued a six-page ruling, entitled "Findings and Order After Hearing," but it did not formally issue a statement of decision.

As Aaron properly concedes, the trial court was not required to issue a statement of decision. (See *Mechanical Contractors Assn. v. Greater Bay Area Assn.* (1998) 66 Cal.App.4th 672, 678 [78 Cal.Rptr.2d 225] ["The general rule is that a trial court need not issue a statement of decision after a ruling on a motion"]; see also *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1294 [240 Cal.Rptr. 872, 743 P.2d 932].)[25] Aaron argues, however, that even though a statement of decision was not required in this case, the trial court erred by refusing to exercise its *discretion* to issue a statement of decision. In support of his argument, Aaron points out that the trial court has the *discretion* to issue a statement of decision even in instances where it is not *required* to do so. (See *Khan v. Superior Court* (1988) 204 Cal.App.3d 1168, 1173, fn. 4 [251 Cal.Rptr. 815] ["[Code of Civil Procedure s]ection 632 and [the corresponding rule of court] are directed to situations where a statement of decision is required; they do not limit situations where a statement of decision can be permitted"].)

We reject Aaron's argument. He has cited no authority *requiring* the trial court to exercise its discretion to issue a statement of decision in any specific instance. Further, we find no basis in statute or case law for a rule requiring the trial court to exercise its discretion to issue a statement of decision in instances where Code of Civil Procedure section 632 does not require it. Accordingly, we conclude that the trial court did not err in refusing to issue a statement of decision when it was not required by statute to do so.

---

[25] No additional procedural rules requiring the issuance of a statement of decision appear in the Family Code in the context of a dissolution proceeding, except that section 2127 specifically requires a trial court to provide a statement of decision when it resolves controverted factual evidence in ruling on a request for relief from a judgment.

## DISPOSITION

The trial court's order is affirmed.

O'Rourke, Acting P. J., and Aaron, J., concurred.