Filed 7/23/13  Marriage of Young CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Marriage of DEBBARA and JOSEPH YOUNG. | 2d Civil No. B234768 (Super. Ct. No. PD037134) (Los Angeles County) |
| DEBBARA GIPSON-YOUNG,<br><br>    Respondent,<br><br>v.<br><br>JOSEPH YOUNG,<br><br>    Appellant. | |

Following four years of active litigation, the trial court dissolved the marriage of Joseph Young and Debbara Gipson-Young, and awarded Debbara sole physical custody of the couple's two minor children subject to supervised visits by Joseph. [1]  The court also imposed $120,000 in sanctions against Joseph under Family Code sections 2107, subdivision (c), and 271. [2]  Joseph appeals the custody and visitation

---

[1] For ease of reference, we refer to the parties by their first names.  We intend no disrespect.

[2] Unless otherwise indicated, all statutory references are to the Family Code.

ruling, as well as the sanctions order. We conclude the trial court did not abuse its discretion, and affirm.

## FACTS AND PROCEDURAL HISTORY

Joseph and Debbara were married for nearly 20 years. They had four children, two of whom were minors when Joseph and Debbara separated.

A. *Child Custody and Visitation*

Joseph and Debbara settled the issues of custody and visitation. Under their settlement, the couple shared joint legal custody of their minor children, but Debbara was to have primary physical custody. Joseph would have the children for six hours each weekend and for a weekly three-hour weeknight visit. The parties further agreed that Joseph's weekend custody would convert to overnight visits three months later.

Just after the overnight visits were to start, Joseph asked the trial court to give him sole physical custody and to hold Debbara in contempt for denying him his visitation rights under the settlement. Debbara opposed Joseph's motion and requested that his visits be supervised because Joseph had been swearing at the children and because the children felt unsafe around him. Following a hearing, the court declined to find Debbara in contempt. Before the court ruled on Joseph's pending motion to modify custody, Debbara sought a temporary restraining order (TRO) barring any overnight visits and requiring all other visits to be supervised. Debbara alleged that Joseph had been "verbally abusive" and "physically rough" with the children, who feared him. The court granted the TRO.

After a further hearing, the court denied Joseph's request to award him sole physical custody. The court found a "significant change of circumstance" since the parties' settlement, but one that favored Debbara—not Joseph. The court credited Debbara's testimony that the children were afraid of Joseph. The court consequently found it "impractical" to have the children live with Joseph and appropriate to order supervised visits.

2

Joseph moved for reconsideration and for further modification of the custody and visitation order. Concerned that Debbara might be fabricating or exaggerating the children's fear of Joseph, the court appointed children's counsel and a court interviewer to speak with the children. Counsel reported that the children were afraid of Joseph. The interviewer testified that the children told her that Joseph was calling them names and occasionally pushing them, and offered her opinion that the children had not been coached. Finding the interviewer's testimony to be "very powerful," the court ruled that Joseph had made "inappropriate remarks" and engaged in "inappropriate corporal punishment." The court reduced Joseph's visitation to two-hour supervised visits.

The court denied Joseph's further requests for reconsideration.

B. *Sanctions*

More than three years into the litigation, Debbara sought attorney's fees and sanctions against Joseph on the ground that Joseph had engaged in dilatory litigation tactics that prolonged the lawsuit. Following a hearing, the court awarded Debbara $120,000 in sanctions under sections 2107, subdivision (c), and 271. The court ruled that sanctions were appropriate under section 2107 because Joseph had concealed "two Vanguard retirement accounts, which were required to be disclosed" and whose nondisclosure created an additional issue for trial. The court further ruled that sanctions were also warranted under section 271 not only for his concealment of the Vanguard accounts, but also because Joseph (1) first asserted additional community debts after the settlement, which he withdrew after further costly litigation; (2) "engineered sham transfers of certain real properties"; and (3) "transferred funds and sought to conceal financial documents."

## DISCUSSION

### I. *Custody and Visitation*

A trial court has the authority during marriage dissolution proceedings to modify its orders regarding child custody and visitation. (§§ 3021, subd. (a); 3022 [court

may make "order[s] for the custody of a child during minority that seem[] necessary or proper"].)  We review a trial court's rulings on such matters for an abuse of discretion. (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32.)

Joseph offers three reasons why the trial court abused its discretion in refusing to grant him sole physical custody and instead mandating supervised visits. First, Joseph contends that the trial court erred in modifying the custody and visitation order to his detriment because he—and not Debbara—requested modification.  A trial court has the power to modify such orders without any request at all, so the identity of the movant is irrelevant if the best interests of the children require modification.  (See § 3087 ["An order for joint custody may be modified or terminated upon the petition of one or both parents *or on the court's own motion* if it is shown that the best interest of the child requires modification or termination of the order"], italics added.)

Second, Joseph asserts that the trial court was wrong to give the children's fear of him "controlling weight."  However, Joseph does not dispute that "[t]he nature . . . of . . . contact with both parents" is a relevant consideration in assessing "the best interest of a child."  (§ 3011, subd. (c); accord, *In re William B.* (2008) 163 Cal.App.4th 1220, 1226.)  More to the point, the court did not refuse to give weight to other considerations; rather, the court cited the impracticality of ordering the children to live full-time with a parent they fear and the need to protect the children's safety through supervised visitation.

Lastly, Joseph posits that the court did not properly account for Debbara's efforts to interfere with his relationship with the children.  But the court did consider and question Debbara's motives, and consulted neutral third parties who independently corroborated the existence of the children's fear before ruling on Joseph's motions for reconsideration.

In sum, the trial court amply considered competing considerations in finding that Debbara had established a "significant change in circumstances" warranting departure from the agreed-upon settlement in favor of more limited supervised visitation. This was not an abuse of discretion.

4

## II. *Sanctions*

We review a trial court's order awarding sanctions under sections 2107, subdivision (c) and 271 for an abuse of discretion, and its factual findings supporting that order for substantial evidence. (*In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1478-1479 (*Feldman*).) Accordingly, "'. . . we will overturn such an order only if, considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order. . . .'" (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 995, quoting *In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1225-1226 (*Corona*).)

### A. *Award Under Section 2107, Subdivision (c)*

In a dissolution proceeding, a party has a duty to "accurate[ly] and complete[ly] disclose[] . . . all assets and liabilities in which [that] party has or may have an interest" (§ 2102, subd. (a)(1)), and to prepare and file preliminary and final disclosure forms (§§ 2104, 2105). If a party does not comply with these duties, a court must impose sanctions "unless the court finds that the noncomplying party acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (§ 2107, subd. (c); *In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1318-1319 (*Tharp*).) Joseph does not deny that he was aware that he owned two retirement accounts with Vanguard or that he did not disclose them in his disclosure forms, during his depositions or through any document productions. Sanctions are therefore required unless an exception applies.

Joseph argues that the trial court abused its discretion because sanctions are "unjust" for two reasons. First, he contends that his nondisclosure was inadvertent. However, sanctions under this section are not limited to intentional or malicious nondisclosures. (§ 2107, subd. (c).) Further, the trial court was within its discretion to view Joseph's repeated and consistent omissions as more than accidental, and sanctions for those omissions as just. Second, Joseph asserts that sanctions are unjust because Debbara or her attorneys knew about the Vanguard accounts from his mention of them

5

in a letter sent prior to trial and during his trial testimony, and that Debbara was consequently not harmed by his nondisclosure on the other occasions. But injury to an opposing party is not a prerequisite to sanctions under this section. (*Feldman*, *supra*, 153 Cal.App.4th at pp. 1479-1480.) Moreover, the trial court did not abuse its discretion in rejecting this argument. Debbara explained that Joseph's references to the Vanguard accounts were ineffectual because she reasonably assumed that the Vanguard accounts he mentioned had been rolled over into an individual retirement account that had been disclosed elsewhere.

Joseph also argues that the trial court abused its discretion procedurally by issuing sanctions without first reviewing the transcript of his trial testimony mentioning the Vanguard accounts. However, any deficiency in bringing Joseph's testimony to the court's attention—either by providing the court with a transcript or a declaration recounting the testimony reflected therein—lies with Joseph. It is not a basis for reversal, especially when that testimony does not alter our conclusion, noted above, that the trial court acted within its discretion in imposing sanctions notwithstanding Joseph's testimony.

B. *Award Under Section 271*

A trial court may also award attorney's fees and costs as a sanction for conduct that "frustrates the policy of the law [1] to promote settlement of litigation" and "[2] to reduce the cost of litigation by encouraging cooperation of the parties. . . ." (§ 271.) To be sanctionable, conduct need not be "frivolous or taken solely for the purpose of delay." (*Tharp*, *supra*, 188 Cal.App.4th at p. 1318.) It is enough if the conduct is "dilatory and uncooperative." (*Id.* at p. 1317.)[3]

---

[3] The amount of the award must not exceed the opposing party's attorneys fees and costs, and must not impose "'an unreasonable financial burden'" on the sanctioned party. (*Corona*, *supra*, 172 Cal.App.4th at p. 1226.) The $120,000 sanction is less than the $280,000 in attorney's fees Debbara incurred, and Joseph has never contested his ability to pay this award.

6

Joseph's challenge to sanctions under section 271 is based on the same arguments as his challenge to the section 2017 award. We reject this challenge for two reasons. First, the trial court did not abuse its discretion in finding that Joseph's repeated and consistent nondisclosure of the Vanguard accounts constituted uncooperative conduct. Joseph's nondisclosure is not mitigated by the justifications Joseph offers or by the trial court's subsequent ruling that these accounts were his separate property because his tactic unnecessarily prolonged the litigation. Second, this award is supported by the three other reasons that Joseph does not assail on appeal. These reasons are sufficient on their own to support the entire award of sanctions.[4]

## DISPOSITION

The judgment is affirmed. Joseph shall pay Debbara's costs on appeal. Debbara's request for attorney's fees on appeal is denied.

NOT TO BE PUBLISHED.

HOFFSTADT, J.[*]

We concur:

YEGAN, A. P. J.

---

[4] In her brief, Debbara asks this court to (1) assign some of Joseph's assets to satisfy the sanctions award; and (2) order the trial court to recalculate the child support she is owed for July 2009. Because Debbara did not file a cross-appeal, we are without jurisdiction to consider her requests for affirmative relief. (Civ. Proc. Code, § 906; *Bonfigli v. Strachan* (2011) 192 Cal.App.4th 1302, 1317, fn. 12.)

[*] (Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

7

PERREN, J.

Patricia M. Ito, Judge

Superior Court County of Los Angeles
_____


Law Offices of Joseph R. Zamora and Joseph R. Zamora for Defendant and Appellant.

Law Offices of McNamara & McNamara and James E. McNamara for Plaintiff and Respondent.