Filed 9/1/15  Marriage of Salas and Farraj CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re Marriage of EDITH SALAS and AYMAN FARRAJ. | B252053 (Los Angeles County Super. Ct. No. BD490528) |
| EDITH SALAS, Respondent, v. AYMAN FARRAJ, Appellant. | |

APPEAL from postjudgment orders of the Superior Court of Los Angeles County, David S. Cunningham III, Judge.  Affirmed in part and reversed in part.

Patrick L. McCrary; and Patricia J. Barry for Appellant.

Law Offices of Peter A. Lauzon, Peter A. Lauzon and Sharon Stark for Respondent.

————————————————

Ayman Farraj appeals from postjudgment orders awarding attorney fees as sanctions against him for discovery abuses and conduct impeding the resolution of various issues arising from the dissolution of his marriage to Edith Salas. With the exception of the attorney fees related to Farraj's request for an order striking the reports of a psychologist he claimed was biased against him and the initial work on the request to vacate the move-away order, which we find did not warrant sanctions, we affirm the orders.

## FACTUAL AND PROCEDURAL BACKGROUND

Farraj and Salas's marriage of nine years was dissolved on March 9, 2010. Under a stipulated modification to the judgment dated December 21, 2011, Salas was awarded sole legal and physical custody of the couple's two young children; Farraj was limited to four hours per week of professionally monitored visitation, an arrangement that had been in place since December 2010. The visitation terms were negotiated in response to the reports of Bruce Harshman, an independent custody evaluator.[1] In keeping with Harshman's recommendations Farraj participated in multiple anger management training and parenting classes during the next two years. Nevertheless, the monitoring requirement was never lifted, nor was Farraj's visitation expanded.

On March 7, 2013, over Farraj's objection, the trial court granted Salas's request to move with her fiancé and the children to India. Salas was ordered to bring the children to California once each year for a period of four weeks during their summer vacation;

---

[1]     Harshman was not appointed in this action to act as a custody evaluator. He was retained as a conjoint therapist for the family after Farraj accused Salas's then-new boyfriend of sexually abusing the couple's young daughter, an accusation Farraj attributed to his daughter's complaint the boyfriend had asked her to kiss his "peepee" and had touched her "peepee" while bathing her. Salas sought a temporary restraining order against Farraj after he made the accusation. The court denied Salas's request for relief, finding no evidence of abuse under the Domestic Violence Protection Act (Fam. Code, § 6200 et seq.), but granted ex parte relief pursuant to Family Code sections 3027.5 and 3064 requiring Farraj's visitation to be monitored by a trained professional monitor or conjoint therapist who was a licensed mental health professional because of the imputed detriment to the children's well-being caused by false allegations of sexual abuse.

2

Farraj would be allowed to exercise professionally monitored visitation for up to four hours per day during that four-week period. In addition, Salas was ordered to fly Farraj to India for one week each year to allow Farraj to spend up to four hours per day of professionally monitored visitation with the children. Farraj was also to be allowed one telephone call per week with the children.

When Farraj's counsel protested the monitoring requirement was unworkable and unenforceable, the court urged that Harshman be retained to assess whether monitoring of Farraj's visits with his children could be terminated and the visits expanded.[2] Farraj's counsel explained Harshman was unacceptable to Farraj, who believed Harshman was biased against him. Because the move was scheduled for June 2013, the court set a subsequent hearing for April 24, 2013 to consider the appointment of Harshman or another expert to assess whether monitoring should be discontinued.

In April 2013 Farraj retained Patricia Barry as his counsel. Barry's first action on Farraj's behalf was to file a request for an order to show cause alleging Salas should be held in contempt for depriving Farraj of his visitation rights based on Salas's failure to promptly schedule visits or respond to Farraj's telephone calls. Barry did not respond to Salas's counsel's attempts to schedule an evaluation for the purpose of modifying the visitation order because, as Barry later observed, "[Farraj] has been studied to kingdom come." On April 24, 2013 Barry filed a request for an order striking from the record all reports submitted by Harshman on the ground Harshman was prejudiced against Farraj, who is Palestinian, because of his race and religion.[3] On May 6, 2013 Barry filed another request for an order seeking to vacate the move-away order on similar grounds.

_____

[2] Farraj's counsel opposed the appointment of Harshman to update his previous reports because of the antagonistic relationship between Farraj and Harshman.

[3] According to the pleadings Harshman and another consultant, Steven Shaps, exchanged emails characterizing Arab men as "very emotional" "'with a desire to control and manipulate and to change the rules of the game in mid stream . . . .'" Harshman further stated, "'Ayman has severe issues with his anger and doesn't help his cause when [he] externalizes blame or attacks others for not 'groking' [*sic*] (understanding) his culture wherein males are permitted unrestrained angry outbursts, explosions, and

3

The request for an order striking the Harshman reports was heard on June 6, 2013. The trial court ruled the request was moot because the judgment and other orders influenced by the reports had become final and Farraj's former counsel had failed to raise any of the issues now presented by Barry. Because the evidence of bias had been available to Farraj's prior counsel, there was no new evidence to support a motion for reconsideration under Code of Civil Procedure section 1008. Although initially disinclined to find the request frivolous, the court ultimately agreed with Salas's counsel's characterization of the request because it was made so long after Harshman had issued his reports and Farraj had always been represented by counsel and thus could have objected at the time.

Farraj's request for an order vacating the move-away order was heard on June 21, 2013. Barry appeared late for the hearing—well after the court had announced its tentative to deny the requested order—and filed a declaration under Code of Civil Procedure section 170.1, subdivision (a)(6), seeking to disqualify Judge David S. Cunningham III, who had long presided over the case. The verified declaration alleged Judge Cunningham was prejudiced against Barry based on her advocacy on behalf of a former client and against Farraj based on his race and religion. Judge Cunningham adjourned the hearing without ruling on the pending request for an order vacating the move-away order. The hearing was reconvened on June 25, 2013 at which time Judge Cunningham announced he had rejected the statement of disqualification. The parties

---

displays in public and private.' . . . [¶] 'The incident [*sic*] of [(domestic violence)] in Middle Eastern cultures is off the chart. His [Farraj] [*sic*] behaviors toward Edith are symptomatic of his cultural upbringing—an upbringing that may not be alterable due to the hardwiring of his infant/toddler brain.'" (Capitalization and boldface omitted.)

Based on Harshman's recommendations to the court, Farraj lost legal custody of his children and was required to submit to monitored visitation. To improve his parenting skills and demonstrate his commitment to his children, Farraj completed 26 four-hour sessions with a parenting coach, 90 hours of parenting classes with another consultant, 20 anger management sessions with Shaps, an additional 10 sessions with another parenting coach and 43 group sessions for men with anger management issues.

4

submitted without argument on the previously announced tentative ruling denying the motion.

On July 8, 2013 Barry filed a request for an order modifying the existing child custody and child support orders and an end to monitored visitation. In the attached declaration Farraj asserted Salas had failed to account for sums garnished from his wages and owed him nearly $16,000 in tuition and after-school-care costs. He also stated he had been laid off from his job. He did not provide a complete income and expense declaration.

On July 18, 2013 Salas filed a request for an order imposing sanctions against Farraj pursuant to Family Code section 271.[4] The request sought payment of $150,000 in attorney fees incurred by Salas after Farraj's retention of Barry because of Farraj's repeated attempts to vacate the existing visitation and move-away orders.

On July 30, 2013 Barry served eight subpoenas on various individuals and entities seeking production of documents at the August 21, 2013 hearing on Farraj's request for modification of the custody, support and visitation orders.[5] On August 6, 2013 Salas's counsel sent a letter objecting to the subpoenas and requesting their withdrawal. Salas thereafter filed an opposition to the request for modification based on Farraj's failure to agree to an updated evaluation or to support his application with accurate income and expense information. She also informed the court Farraj had been reinstated in his job only days after filing the request. On August 14, 2013, due to Barry's failure to withdraw the subpoenas, Salas's counsel moved to quash the subpoenas and sought discovery sanctions in the amount of $2,910 for each of the eight motions ($23,280).

---

[4]    Statutory references are to this code unless otherwise indicated.

[5]    The subpoenas were directed to Christopher Mahan, a lawyer who formerly represented Salas; Christine Gille, another lawyer who formerly represented Salas; Suzanne Winnick, a therapist who treated one of the children at the time of the Harshman evaluation; the Halsey School, a preschool attended by the children at the time of the evaluation; Fidelity Investments, where Salas held a 401(k) retirement plan; and three banks, Chase Bank, Citibank and Bank of America, where Salas held various accounts.

The trial court denied Farraj's request for modification in its entirety on August 21, 2013. On August 28, 2013 Salas's counsel informed Barry the document subpoenas were moot because the underlying request for modification had been denied. Nonetheless, Salas intended to seek the costs associated with filing the motions to quash—a request scheduled for hearing on September 13, 2013—unless Farraj made an acceptable offer on the sanctions request. Barry responded the motions themselves were moot and should be taken off calendar. Instead of filing an opposition to the motions to quash or formally withdrawing the subpoenas, Barry filed an ex parte application seeking to take the motions off calendar. The application was denied. At the hearing on September 13, 2013 the court granted the motions to quash and awarded sanctions against Farraj in the amount of $10,680, payable at the rate of $1,000 per month with an acceleration clause in the event of nonpayment. In a subsequent hearing on September 23, 2013, the court denied Farraj's requested order to show cause re contempt—the first pleading filed after he retained Barry in April 2013—finding the request was frivolous.

The hearing on the section 271 sanctions was continued to November 8, 2013 to allow supplemental briefing and evidence about Farraj's ability to pay and the fees claimed by Salas. Salas served discovery on the subject of Farraj's finances, but Farraj objected to the discovery as beyond the scope of the court's order and improper in a postjudgment collateral proceeding. At the November 8, 2013 hearing the court granted the section 271 motion, finding that Barry's "choice of tactics" had frustrated the policies of promoting settlement and reducing the cost of litigation. The court continued, "Now, despite your efforts . . . to try to make this about [Salas's counsel] and about me and about racism and about religious discrimination, it has never been about that from what I can tell. What it has been about is the best interests of the child, due process, law and rules." The court observed that Farraj's most recent income and expense declaration was incomplete and he had failed to appear for his deposition or produce documents: "[T]hat is just further evidence of Mr. Farraj's desire to ignore the policy of attempting to settle cases and reduce the cost of litigation . . . ." The court granted the section 271 motion

6

and awarded fees of $123,087.50, consisting of the fees Barry had not disputed as excessive. The court ordered Farraj to file an updated income and expense declaration, lodge his most recent tax returns and submit a proposed payment plan for the sanctions in time for a further hearing on December 9, 2013. The court further ordered, if Farraj failed to produce the documents, the sanctions would be due forthwith.

Farraj failed to provide the court with any of these documents or to appear at the December 9, 2013 hearing. Barry advised the court Farraj had not complied with the court's order because she had agreed to accept an assignment of any sanctions levied against her client. Finding Farraj's noncompliance was willful, the court ordered the entire amount paid to Salas's counsel no later than January 1, 2014.

## DISCUSSION

1. *The Discovery Sanctions Order Is Appealable, and the Court Did Not Abuse Its Discretion in Awarding Attorney Fees to Salas in Connection with the Motions To Quash*

   a. *The order is appealable*

The existence of an appealable judgment or order is a jurisdictional prerequisite to an appeal. (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126.) A trial court's order is appealable only when made so by statute. (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696; see *Dana Point Safe Harbor Collective v. Superior Court* (2001) 51 Cal.4th 1, 5 ["[t]he right to appeal is wholly statutory"].)

Code of Civil Procedure section 904.1 authorizes the immediate appeal of certain orders imposing monetary sanctions over $5,000 and provides for review of orders imposing sanctions of lesser amounts on appeal from the final judgment. (Code Civ. Proc., § 904.1, subds. (a)(11) & (12), (b).) Lesser sanction orders are reviewable only upon writ petition or on appeal after final judgment. (*Id.*, § 904.1, subd. (b).)

Salas contends the discovery sanctions award here is unreviewable because it is an aggregate award reflecting the attorney fees incurred with respect to eight separate motions to quash, each of which was granted by the trial court. Salas requested sanctions and estimated her fees by the time of hearing to be $2,910 for each motion, well under

7

the statutory limit of $5,000. The trial court granted each motion although it reduced the requested fees on the combined motions from $23,280 to a total amount of $10,680.

Salas is correct that the $5,000 threshold cannot be satisfied by aggregating separate sanctions awards. Considering the appealability of two sanction awards that, unless aggregated, fell below the then-statutory minimum of $750, the court in *Calhoun v. Vallejo City Unified School Dist.* (1993) 20 Cal.App.4th 39 rejected the plaintiff's argument the aggregated amount exceeded $750 and was thus appealable: "We conclude that because of the Legislature's intent to reduce the number of appeals from monetary sanction orders and the confusion that would result from a rule permitting aggregation, multiple sub-$750 sanctions may not be aggregated under any circumstances to meet the appealability threshold of [former] Code of Civil Procedure section 904.1, subdivision (k). We endorse a bright line rule that a sanction order is nonappealable if it does not impose any sanction exceeding $750, and thus an order requiring payment of multiple sanctions, none of which exceed[s] $750, is nonappealable even if the total aggregated sanctions exceed $750." (*Calhoun*, at p. 45; see Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2014) ¶ 2.82.2, p. 2-57 ["[m]ultiple monetary sanctions orders or judgments *may not be aggregated* to meet the statutory threshold for appealability"].) Even if separate sanctions are imposed for what is essentially the same conduct, "[s]uch standards for aggregation would inject an unwelcome dose of uncertainty into the appellate process. The Legislature intended to create a . . . 'bright line' threshold for appealability of monetary sanction orders. [Citation.] A rule permitting aggregation of 'same conduct' or 'nonseparate' sanctions would blur that bright line." (*Calhoun,* at p. 45.)

The sanctions order at issue here, however, was made after entry of the final judgment of dissolution, and Code of Civil Procedure section 904.1, subdivision (a)(2), generally permits an appeal to be taken from a postjudgment order. Nonetheless, "[d]espite the inclusive language of [this section], not every postjudgment order that follows a final appealable judgment is appealable. To be appealable, a postjudgment order must satisfy two additional requirements." (*Lakin v. Watkins Associated Industries*

8

(1993) 6 Cal.4th 644, 651, fn. omitted.) "The first requirement . . . is that the issues raised by the appeal from the order must be different from those arising from an appeal from the judgment. [Citation.] 'The reason for this general rule is that to allow the appeal from [an order raising the same issues as those raised by the judgment] would have the effect of allowing two appeals from the same ruling and might in some cases permit circumvention of the time limitations for appealing from the judgment.' [Citation.] . . . [¶] The second requirement . . . is that 'the order must either affect the judgment or relate to it by enforcing it or staying its execution.' [Citation.] Under this rule, a postjudgment order that does 'not affect the judgment or relate to its enforcement [is] not appealable.'" (*Id.* at pp. 651-652; accord, *Bates v. Rubio's Restaurants, Inc.* (2009) 179 Cal.App.4th 1125, 1130-1131.) The *Lakins* Court held that a postjudgment order denying an award of attorney fees requested for an abuse of discovery rules was appealable because it "affects the judgment or relates to its enforcement because it determines the rights and liabilities of the parties arising from the judgment, is not preliminary to later proceedings, and will not become subject to appeal after some future judgment." (*Lakin*, at p. 656; see also *Shelton v. Rancho Mortgage & Investment Corp.* (2002) 94 Cal.App.4th 1337, 1343-1343 [postjudgment order denying request for sanctions under Code of Civil Procedure section 128.5 "is a final determination of the rights and liabilities of the parties arising from the judgment . . . [,] is not preliminary to some later proceeding, and there is no future judgment from which the order might be appealed"]; *In re Marriage of Dupre* (2005) 127 Cal.App.4th 1517, 1525 ["[f]ollowing in the wake of *Lakin* and *Shelton,* we find the denial of [Family Code] section 3027.1 sanctions appealable"].)

The same principles apply here. The postjudgment order at issue granted an award of attorney fees as sanctions for discovery abuse; and, with respect to the motion to quash, it was a final determination of the rights and liabilities of the parties, was not preliminary to any other proceeding, and there is no future judgment from which the order may be appealed. Accordingly, we have jurisdiction to review the order.

9

b. *The award was within the broad discretion of the trial court*

"The Civil Discovery Act ([Code Civ. Proc., ]§ 2016.010 et seq.) provides in pertinent part: 'To the extent authorized by the chapter governing any particular discovery method . . . , the court, after notice . . . and after opportunity for hearing, may impose the following sanctions against anyone engaging in conduct that is a misuse of the discovery process: [¶] (a) . . . If a monetary sanction is authorized by any provision of this title, the court *shall* impose that sanction *unless* it finds that the one subject to the sanction acted with *substantial justification* or that other circumstances make the imposition of the sanction unjust.' ([Code Civ. Proc.,] § 2023.030, subd. (a), italics added.)" (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1434.)

In reviewing an order imposing a monetary discovery sanction, the *Doe* court explained, "In a variety of similar contexts, the phrase 'substantial justification' has been understood to mean that a justification is clearly reasonable because it is well grounded in both law and fact. [Citations.] We have no reason to believe that the Legislature intended a different meaning here." (*Doe v. United States Swimming, supra,* 200 Cal.App.4th at pp. 1434-1435; accord, *Diepenbrock v. Brown* (2012) 208 Cal.App.4th 743, 747.) The burden falls on the party who lost the discovery motion to establish it had acted with "substantial justification." (*Doe,* at p. 1435.)

We review the trial court's sanctions order under the deferential abuse of discretion standard. (*Ellis v. Toshiba America Information Systems, Inc.* (2013) 218 Cal.App.4th 853, 878; *Diepenbrock v. Brown, supra,* 208 Cal.App.4th at p. 747.) The trial court has broad discretion to impose sanctions for violations of court orders, including those intended to compel compliance with a party's disclosure and discovery obligations, subject to reversal only for arbitrary or capricious action. (*Parker v. Wolters Kluwer United States, Inc.* (2007) 149 Cal.App.4th 285, 297.) We resolve any evidentiary conflicts most favorably to the trial court's ruling. (*Ellis,* at p. 878.)

Farraj argues that he was substantially justified in issuing discovery subpoenas related to his request for modification of the existing visitation monitoring restrictions. That is possibly true, but it misses the point. The request for an order modifying the

10

restrictions was denied by the court in ample time for Barry to withdraw the subpoenas. Rather than take this simple step, Barry quixotically refused to withdraw the subpoenas on the ground the motions to quash were moot, a legal position the court ultimately rejected. She also failed to file an opposition to the motions and refused to defend the relevance of the materials sought by the subpoenas when given a chance. The court decision this conduct was not substantially justified was not an abuse of the court's broad discretion.

2. *The Court Did Not Abuse Its Discretion in Deciding To Award Sanctions Under Section 271; on Remand Attorney Fees Related to the Request for an Order Striking the Harshman Reports Should Be Deducted*

Section 271 provides the court in family law proceedings with authority to order payment of attorney fees and costs in the nature of a sanction to encourage cooperation and discourage litigation tactics that increase the cost of litigation. (§ 271, subd. (a).)[6] "Family law litigants who flout that policy [of promoting settlement of issues and cooperation among counsel and parties] by engaging in conduct that increases litigation costs are subject to the imposition of attorneys' fees and costs as a sanction." (*In re Marriage of Petropoulos* (2001) 91 Cal.App.4th 161, 177; see *In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1225.) An award of fees as a sanction under section 271 does not require any showing of need or actual injury. (See *In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1478-1479.)

---

[6] Section 271, subdivision (a), provides: "Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed. In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award."

"We review an award of attorney fees and costs under section 271 for abuse of discretion. [Citation.] 'Accordingly, we will overturn such an order only if, considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order. [Citations.]' [Citation.] We review any factual findings made in connection with the award under the substantial evidence standard." (*In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 291; accord, *In re Marriage of Corona, supra,* 172 Cal.App.4th at p. 1225.)

Farraj contends the court abused its discretion by finding his requests to strike the Harshman reports and to vacate the move-away order to be frivolous in light of the evidence he had presented of Harshman's bias and the fact the order permitted Salas to move the children to India, a destination that would seriously impair his ability to maintain a parental relationship with his children. He argues the two requests should have been deemed a motion for reconsideration or for a new trial and that he should not be penalized for the improper actions of Barry, who is no longer his counsel.[7] He also contends the court awarded sanctions without considering his ability to pay.

Farraj correctly points out that a court should use caution in determining a motion is frivolous. As the Supreme Court has advised in the context of appellate proceedings, "An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions. . . . '[T]he borderline between a frivolous appeal and one which simply has no merit is vague indeed . . . . The difficulty of drawing the line simply points up an essential corollary to the power to dismiss frivolous appeals: that in all but the clearest cases it should not be used.' [Citation.] The same may be said about the power to punish attorneys for prosecuting frivolous appeals: the punishment should be used most sparingly to deter only the most egregious conduct." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650-651; see Code Civ. Proc., § 128.5, subd. (b)(2) [defining a frivolous action to be one that is "totally and completely without merit or for the sole purpose of

---

7       Barry filed the opening brief on behalf of Farraj. Patrick L. McCrary substituted in as counsel for Farraj on March 2, 2015 and filed the reply brief.

12

harassing an opposing party"]; cf. *State of California ex rel. Standard Elevator Co., Inc. v. West Bay Builders, Inc.* (2011) 197 Cal.App.4th 963, 982 ["clearly frivolous" action under the False Claims Act (Gov. Code, § 12650 et seq.) is one devoid of merit].)

However, whether the action is frivolous or devoid of merit is not the sole focus of section 271. "Rather, the statute is aimed at conduct that frustrates settlement of family law litigation. Expressed another way, section 271 vests family law courts with an additional means with which to enforce this state's public policy of promoting settlement of family law litigation, while reducing its costs through mutual cooperation of clients and their counsel. 'Thus, a party who individually, or by counsel, engages in conduct frustrating or obstructing the public policy is thereby exposed to liability for the adverse party's costs and attorney fees such conduct generates.'" (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1318.) The family law court's determination on this issue is entitled to our deference and ""'will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order.'" [Citation.] 'In reviewing such an award, we must indulge all reasonable inferences to uphold the court's order.'" (*Feldman, supra,* 153 Cal.App.4th at p. 1478; see *In re Marriage of Sorge* (2012) 202 Cal.App.4th 626, 652.)

The family law court did not initially view Farraj's request for an order striking the Harshman reports as frivolous. Rather, the court reached that conclusion only after Salas's counsel argued any potential bias on the part of Harshman was known to Farraj and his former counsel well before the court ruled on Salas's request for a move-away order. We agree with the court's initial evaluation of the request to strike the Harshman reports. From Farraj's perspective, he had advised his former counsel of his belief Harshman was biased. Although former counsel did not object to the court's orders on this ground, Barry's determination, once she entered the case, to bring evidence of Harshman's bias to the attention of the court was not "totally and completely without merit."[8] To the extent, therefore, the court's award of section 271 sanctions was based

---

[8] At one juncture during the hearing, the court recognized the request could have

13

upon Farraj's request for an order striking the Harshman reports, it was overbroad; and any fees associated with the defense of that request were improperly assessed against Farraj. Similarly, any fees incurred by Salas to respond to Farraj's May 6, 2013 request to vacate the move-away order prior to the court's June 6, 2013 denial of the request to strike the Harshman reports must be eliminated from the amount of sanctions imposed. Until the court denied the initial request, Farraj and his counsel had not engaged in sanctionable conduct.

The trouble with Farraj's argument with respect to further proceedings is his apparent unwillingness to rein in his counsel after the denial of the request to strike the Harshman reports. While the evidence of Harshman's bias is troublesome, and the looming departure of his children to India with onerous visitation restrictions undoubtedly motivated him, Farraj apparently instructed Barry to do anything necessary to upset the existing orders, a strategy we cannot condone. In pursuing relief for Farraj, Barry eschewed common sense legal tactics for theatrical—but inherently futile—legal gestures and ignored procedural rules. For instance, in April 2013 when Barry entered the case, the court had already indicated its willingness to entertain evidence of Farraj's improved parenting skills. Rather than pursue this avenue after having brought evidence of Harshman's bias to the attention of the court, Barry filed two more requests in quick succession that reiterated the claim of bias but provided little more than anecdotal acclamation of Farraj's good intentions and parenting skills. Rather than reassess her strategy after the first request had been rejected, Barry shifted her attack to the judge, alleging he too was biased against both her and her client. That this step was fruitless is

been deemed a timely motion for reconsideration under Code of Civil Procedure section 1008, although the final move-away order had not yet been entered. (See *Lucas v. Santa Maria Public Airport Dist.* (1995) 39 Cal.App.4th 1017, 1027 ["[f]or purposes of a motion for reconsideration, it does not matter whether the order attacked is an interim one or whether it is final"]; accord, *In re Marriage of Barthold* (2008) 158 Cal.App.4th 1301, 1312.) Even if the court had previously been aware of Farraj's belief Harshman was biased, the evidence of Harshman's statements was a proper basis for the court to exercise its discretion to reconsider orders based on those reports. (*Barthold,* at pp. 1308-1309.)

hardly surprising; there is absolutely no evidence in this record of improper bias on the part of the trial judge.

Barry's failure to resolve the dispute over the motions to quash further illustrates her unwillingness to constructively resolve disputed issues between the parties. After the court denied the underlying request for modification, Barry failed to alert the subpoenaed witnesses that their depositions would not proceed. When notified of Salas's counsel intent to proceed with the motions to quash, Barry could have simply notified the witnesses she was withdrawing the subpoenas. Rather than take this simple step, she insisted the subpoenas and motions to quash were moot and sought ex parte relief from the court to take the motions off calendar, a request the court predictably denied. She then failed to submit any opposition to the motions. At the hearing she refused the court's request to identify the relevance of the subpoenaed witnesses' documents or anticipated testimony, adhering instead to the position the subpoenas and motions to quash were moot and the court lacked jurisdiction. The court granted the motions to quash and awarded sanctions against her client.

This same pattern infected Barry's handling of the section 271 motion. Instead of opposing the motion on the ground Farraj's litigation strategy had not been frivolous or designed to impede settlement, Barry argued sanctions should instead be awarded against Salas based on the aggressive litigation tactics of her counsel, a request she simply inserted into Farraj's response to Salas's motion. The court granted Salas's request for sanctions and denied Farraj's request. The court set a further hearing to allow Farraj to address his ability to pay the sanctions and ordered him to produce an income and expenses statement. Notwithstanding this opportunity, Barry filed nothing on Farraj's behalf. At the hearing, instead of focusing on his ability to pay, she announced to the court she had accepted an assignment of the sanctions and Farraj would not be producing the income and expenses statement. The court concluded Farraj's failure to respond was willful and ordered the sanctions paid forthwith.

Under these circumstances, the trial court's decision to award section 271 sanctions in this case was not an abuse of discretion. Barry repeatedly flouted procedural

15

rules and justified her actions through attacks on opposing counsel and the court. The trial court's conclusion this cavalier attitude not only prolonged the litigation but also caused Salas to incur otherwise unnecessary attorney fees was not unreasonable.

In finding no abuse of discretion by the trial court, we do not imply that Salas's counsel's own litigation posture was a model of efficiency. This case was over-litigated on both sides. Salas's counsel, however, adhered to the rules of civil procedure and substantive law. The court did not abuse its discretion by awarding sanctions under section 271 and, with the exception of the fees incurred by Salas prior to the denial of Farraj's request for an order striking the Harshman reports, we affirm the order in its entirety.

## DISPOSITION

The appeal from the order imposing discovery sanctions on Farraj is affirmed. The order imposing sanctions pursuant to section 271 is reversed and remanded to allow the recalculation of attorney fees to deduct the fees associated with the motion to strike the Harshman reports and responding to the motion to vacate the move-away order incurred prior to June 6, 2013. The parties are to bear their own costs on appeal.


PERLUSS, P. J.


We concur:


ZELON, J.                    STROBEL, J.[*]

---

[*]    Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16