Filed 11/21/25  Razaqi v. Khurush CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| SARAH RAZAQI, | C099636, C101262 |
| Plaintiff and Respondent, | (Super. Ct. No. STAFLDWC20170005083) |
| v. | |
| JAWED KHURUSH, | |
| Defendant and Appellant; | |
| ARZO RAZAQ, | |
| Claimant and Appellant. | |

This consolidated appeal arises out of a marital dissolution proceeding in which Sarah Razaqi (wife) and Jawed Khurush (husband) disputed whether the home they lived in at the time of separation (the Property) was community property.  Husband's sister, Arzo Razaq (sister), was joined in the action.  After a bench trial, the court found the Property was community property even though paper title was in sister's name because

1

title was taken pursuant to a "straw buyer" agreement among the parties, and husband and wife were intended to be the true owners. During trial, husband and his sister denied the existence of this agreement, denied husband and wife reimbursed sister for the down payment, and claimed husband and wife merely rented the Property from sister. The trial court found husband's and sister's testimony not credible, and concluded husband breached his fiduciary duty to wife by repeatedly repudiating the straw buyer agreement and that he colluded and worked in concert with his siblings in their effort to deprive his wife and children of "their sole, exclusive, and valuable asset." The court awarded all of the Property to wife based on this breach under Family Code section 1101, subdivision (h).[1] Additionally, the court awarded wife a total of $154,840 in attorney's fees under section 2030 and an additional $200,000 as sanctions under section 271.

On appeal, sister argues: (1) the court had no subject matter jurisdiction over wife's dispute with her; (2) the court erred in finding by clear and convincing evidence that sister entered into a straw buyer agreement; (3) this dispute is barred by the two-year statute of limitations for oral contracts; and (4) the court erred in finding sister's motion to disqualify the trial court judge under Code of Civil Procedure section 170.6 was untimely and in striking her Code of Civil Procedure section 170.1 declaration. Husband argues the trial court exceeded its authority under section 1101, subdivision (h) by awarding all of the Property to wife. Sister and husband both challenge the awards of attorney's fees under sections 271 and 2030. We affirm the orders awarding the Property to wife and awarding her attorney's fees.

## I. BACKGROUND

Husband and wife married in 1999. In 2012, husband and wife wanted to move out of her parents' house. They had sold their previous home in a short sale and

---

[1] Undesignated statutory references are to the Family Code.

2

discussed with husband's brother, who was a realtor, how this might affect their credit. Husband's brother suggested that instead of buying a home directly, husband and wife use sister as a straw buyer. Husband and wife would pay the mortgage, and sister would benefit from the tax write-offs. Escrow closed on the Property in May 2012. Afterwards, husband and wife made extensive improvements to the home, including remodeling the kitchen, without consulting sister. Husband and wife separated in 2015, but continued to live together.

Wife testified that she and husband paid the entire amount of the down payment, and made the mortgage payments until she moved out of the home in August 2019. Wife testified that the agreement was supposed to last for at least a year or two, after which sister would transfer title to wife and husband.

In 2017, wife and husband met with sister and informed her that they were divorcing and discussed selling the Property. Wife learned that husband had promised sister a share of equity in the home. Wife's understanding after the meeting was that the house would be sold, she would receive her half, and husband and sister would work out their own agreement for the other half.

In September 2017, wife filed the underlying action for dissolution of marriage. Wife submitted a property declaration indicating the Property was community property. In 2019, wife discovered husband stated in his property declaration that he and wife rented the Property. His May 2019 income and expense declaration also stated that he rented.

In August 2019, wife filed a related civil complaint alleging various causes of action against husband, sister, and others including breach of contract, quiet title, imposition of resulting trust, equitable division of proceeds and rental value credit, declaratory relief, disparagement of title, and fraud. These proceedings were stayed pending resolution of this matter.

Husband's and wife's marital status was dissolved at a settlement conference in March 2023.

The following month, the court conducted a bench trial on whether the Property was community property. Sister had previously been joined in this proceeding. The court issued its statement of decision on September 7, 2023.

The court found by clear and convincing evidence that husband, wife, and sister entered into a straw buyer arrangement facilitated by husband's brother. The court recognized that as a result of the straw buyer agreement, all of the parties had unclean hands. Nonetheless, the court found the straw buyer agreement was enforceable because the contract had already been performed, third parties had received all payments owed, wife was less culpable, and failing to enforce the agreement would result in sister being unjustly enriched. (See, e.g., *Johnson v. Johnson* (1987) 192 Cal.App.3d 551, 557.) The court also explained that, as a result of the substantial performance of the oral straw buyer agreement, the Statute of Frauds did not apply.

The court imposed a resulting trust. " 'A resulting trust arises by operation of law from a transfer of property under circumstances showing that the transferee was not intended to take the beneficial interest. [Citations.] Such a resulting trust carries out and enforces the inferred intent of the parties. [Citations.] "Ordinarily a resulting trust arises in favor of the payor of the purchase price of the property where the purchase price, or a part thereof, is paid by one person and the title is taken in the name of another." ' " (*Estate of Yool* (2007) 151 Cal.App.4th 867, 874.) "In other words, the relationship between resulting trustee and beneficiary arises where one, in good faith, acquires title to property *belonging to another*. The law implies an obligation on the part of the one in whom title has vested to hold the property for the owner's benefit and eventually convey it to the owner." (*Ibid.*) The court concluded the evidence showed the parties' intent that the beneficial interest in the Property was to be enjoyed solely and exclusively by husband and wife. The court found that sister was not intended to be the true owner, and

4

husband and wife were meant to be the true owners of the Property. The court found that all parties knew husband and wife were not renting the Property from sister. The court found the resulting trust was enforceable because, with the sister's consent as trustee, wife as the beneficiary took possession of the Property, made valuable improvements, and irrevocably changed her position in reliance on the trust. The court adjudicated wife as the Property's sole, true, equitable, and beneficial owner, and explained that title should be quieted in her name as sister's paper title was deemed to confer, at best, nominal status as trustee of a resulting trust in wife's favor. With respect to the issue of whether the award to wife included reimbursement of all previously withdrawn home equity, the court confirmed that it found the Property was community property, and it awarded wife 100 percent of the Property and any equity therein as of the date of separation.

Additionally, the court awarded all of the Property to wife under section 1101, subdivision (h) on the basis of its finding that husband breached his fiduciary duty to wife.

In February 2024, sister attempted to disqualify the judge who issued the statement of decision under Code of Civil Procedure section 170.6, but her filing was rejected as untimely.

On April 8, 2024, the court issued its order on attorney's fees and costs.

Husband and sister appealed from both the September 7, 2023 and April 8, 2024 orders. We granted the parties' joint motion for consolidation of these cases, and consolidated these cases for purposes of briefing, oral argument, and decision.

## II. DISCUSSION

### A. *Standards for Appellate Briefs*

We begin with a few words regarding appellate briefing. Orders and judgments are presumed to be correct, and the appellant must affirmatively show error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "To demonstrate error, appellant must present

meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.] When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' [Citations.] Hence, conclusory claims of error will fail." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) Moreover, any arguments raised or only supported by authority on reply have been waived. (*People v. Baniqued* (2000) 85 Cal.App.4th 13, 29.)

In addition, the appellant must "[s]tate each point under a separate heading or subheading summarizing the point." (Cal. Rules of Court, rule 8.204(a)(1)(B).) "This is not a mere technical requirement." (*In re S.C., supra*, 138 Cal.App.4th at p. 408.) It is designed so that we may be advised " 'of the exact question under consideration, instead of being compelled to extricate it from the mass.' " (*Ibid*.) "Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading." (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179.)

B.    *Subject Matter Jurisdiction*

Sister argues the trial court had no subject matter jurisdiction over wife's dispute with her. The court explained that sister was properly joined as a party to the dissolution action, and consented to the joinder. Sister cites no authority explaining why, in an action to determine marital property, a third party who claims ownership of the disputed property cannot be joined. No authority cited by sister adequately supports her jurisdictional argument. As such, we must reject it.

C.    *Substantial Evidence*

Sister argues substantial evidence does not support the existence of the straw buyer agreement. We disagree.

"We review factual findings of the family court for substantial evidence, examining the evidence in the light most favorable to the prevailing party. [Citation.] ' " 'In reviewing the evidence on . . . appeal all conflicts must be resolved in favor of the

[prevailing party], and all legitimate and reasonable inferences indulged in [order] to uphold the [finding] if possible.' " ' " (*In re Marriage of Rossi* (2001) 90 Cal.App.4th 34, 40.) The court found that wife proved by clear and convincing evidence the parties entered into the straw buyer agreement to purchase the Property. Where proof is required by clear and convincing evidence, "we must inquire whether the record contains ' "substantial evidence to support a determination by clear and convincing evidence." ' " (*Ibid.*; see also *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011 ["[T]he question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true"].)

Sister's arguments are unavailing. She essentially asks us to reevaluate the credibility of witnesses by noting that wife was the only witness who testified to the existence of an agreement between the parties. We may not do so. Further, we note wife's testimony was corroborated by other evidence including evidence that communications regarding increasing the offer to purchase the Property were only conveyed to husband and wife; meanwhile, sister did not tour the home prior to purchasing it. The existence of the straw buyer agreement was supported by substantial evidence.

D.      *Statute of Limitations*

Sister contends wife's claim is barred by the statute of limitations. We are unpersuaded.

Sister relies on the two-year statute of limitations for actions on an oral contract set forth in Code of Civil Procedure section 339 and asserts that wife failed to prove the civil complaint was brought within this time frame. We disagree with sister's suggestion that the court found a breach of an oral agreement or that this was a basis of its ruling. The court did explain, in part, that wife had claimed husband and sister breached the straw buyer agreement by not transferring title of the home, not cooperating with selling

7

the home for the purpose of giving husband and wife the proceeds of their community property interest therein, and repudiating the agreement by stating that sister is the true owner of the Property and that brother and wife are merely renters. Assuming without deciding that the two-year statute of limitations set forth in Code of Civil Procedure section 339 applies,[2] we disagree that it began to run more than two years before wife brought her claim. (See *Gaglione v. Coolidge* (1955) 134 Cal.App.2d 518, 526 [statute of limitations for breach of oral contract cause of action began to run from "an absolute repudiation of the contract"].) Sister relies on wife's testimony that she stopped being "okay" with the house not being in her name when she separated from husband in 2015. But that does not mean any oral agreement had been breached at this time. The record does not suggest that the parties had agreed to a deadline for transferring title to the Property. Wife testified sister did not "change[] her tone" about the house until May 2019. Wife filed the civil action against sister later that year. Sister's assertion that the dispute over ownership of the property is barred by the applicable statute of limitations is without merit.

E.     *Trial Court's Award of 100 Percent of Property to Wife*

Husband argues the trial court exceeded its authority under section 1101, subdivision (h) by awarding 100 percent of the Property to wife. He argues that various requirements for imposing a remedy under this subdivision were unmet. It provides: "Remedies for the breach of the fiduciary duty by one spouse, as set forth in Sections 721 and 1100, when the breach falls within the ambit of Section 3294 of the Civil Code shall include, but not be limited to, an award to the other spouse of 100 percent, or an amount

---

[2] "The applicable statute of limitations on an action to establish a resulting trust is the four-year statute found in Code of Civil Procedure section 343. [Citation.] The statute of limitations does not begin to run against a voluntary resulting trust in the absence of repudiation by the trustee, that is, until demand has been made upon the trustee and the trustee refuses to account or convey." (*Estate of Yool, supra*, 151 Cal.App.4th at p. 875.)

equal to 100 percent, of any asset undisclosed or transferred in breach of the fiduciary duty." (§ 1101, subd. (h).)

"To the extent that we are called upon to interpret the statutes relied on by the trial court to impose sanctions, we apply a de novo standard of review. [Citation.] We review any findings of fact that formed the basis for the award of sanctions under a substantial evidence standard of review." (*In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1479.)

"Statutory interpretation raises questions of law subject to de novo review. [Citation.] 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language "in isolation." [Citation.] Rather, we look to "the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]" [Citation.] That is, we construe the words in question " 'in context, keeping in mind the nature and obvious purpose of the statute . . . .' [Citation.]" [Citation.] We must harmonize "the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole." ' " (*In re Marriage of Wiese* (2024) 102 Cal.App.5th 917, 930.)

The court imposed a remedy under section 1101, subdivision (h) based on its conclusion that husband breached his fiduciary duty to wife and his actions constituted oppression, fraud, or malice under Civil Code section 3294. We will begin with an overview of husband's fiduciary obligations to wife before we address husband's arguments concerning the statutory requirements for imposition of a remedy under section 1101, subdivision (h).

"The fiduciary obligations of spouses to each other are set forth in section 721, and are made specifically applicable during dissolution proceedings by section 1100,

9

subdivision (e)." (*In re Marriage of Feldman, supra*, 153 Cal.App.4th at p. 1475, fn. omitted.) It provides: "Each spouse shall act with respect to the other spouse in the management and control of the community assets and liabilities in accordance with the general rules governing fiduciary relationships which control the actions of persons having relationships of personal confidence as specified in Section 721, until such time as the assets and liabilities have been divided by the parties or by a court. This duty includes the obligation to make full disclosure to the other spouse of all material facts and information regarding the existence, characterization, and valuation of all assets in which the community has or may have an interest and debts for which the community is or may be liable, and to provide equal access to all information, records, and books that pertain to the value and character of those assets and debts, upon request." (§ 1100, subd. (e).)

"Consistent with these fiduciary obligations, section 2100, subdivision (c) provides that 'a full and accurate disclosure of all assets and liabilities in which one or both parties have or may have an interest must be made in the early stages of a proceeding for dissolution of marriage or legal separation of the parties, regardless of the characterization as community or separate, together with a disclosure of all income and expenses of the parties.' " (*In re Marriage of Feldman, supra*, 153 Cal.App.4th at p. 1476.)

"To implement the disclosure obligation, the Family Code requires the service of a preliminary and final declaration of disclosure '[i]n order to provide full and accurate disclosure of all assets and liabilities in which one or both parties may have an interest . . . .' (§ 2103.) Specifically, '[t]he preliminary declaration of disclosure shall set forth with sufficient particularity,' to the extent that 'a person of reasonable and ordinary intelligence can ascertain [them],' '[t]he identity of all assets in which the declarant has or may have an interest and all liabilities for which the declarant is or may be liable, regardless of the characterization of the asset or liability as community, quasi-community,

10

or separate.' (§ 2104, subd. (c)(1).)" (*In re Marriage of Feldman, supra*, 153 Cal.App.4th at pp. 1476-1477.)

As relevant here, section 721 provides, "in transactions between themselves, spouses are subject to the general rules governing fiduciary relationships that control the actions of persons occupying confidential relations with each other. This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other." (§ 721, subd. (b).)

The court found husband's repeated repudiation of the straw buyer agreement "and the fact it is clear the []Property is community property, even in the face of overwhelming evidence to the contrary," was a breach of his fiduciary duty. Further, the court explained "[w]hat adds to this breach, is [husband] has now colluded with his sister[] and brother[] in denying the existence of the agreement, in an effort to deprive [wife] of her rightful ownership of the []Property."

Section 1101, subdivision (a), provides for a claim by one spouse "against the other spouse for any breach of the fiduciary duty that results in impairment to the claimant spouse's present undivided one-half interest in the community estate, including, but not limited to, a single transaction or a pattern or series of transactions, which transaction or transactions have caused or will cause a detrimental impact to the claimant spouse's undivided one-half interest in the community estate." "Subdivisions (g) and (h) of section 1101 'provide remedies for claims brought under [that section].' [Citation.] Subdivision (g) states, as relevant here, 'Remedies for breach of the fiduciary duty by one spouse, including those set out in Sections 721 and 1100, shall include, but not be limited to, an award to the other spouse of 50 percent, or an amount equal to 50 percent, of any asset undisclosed or transferred in breach of the fiduciary duty plus attorney's fees and court costs.' (§ 1101, subd. (g).) And under subdivision (h), where the breach falls within the scope of Civil Code section 3294—meaning it involves oppression, fraud, or malice—'[r]emedies for the breach of the fiduciary duty by one spouse, as set forth in

Sections 721 and 1100 . . . shall include . . . an award to the other spouse of 100 percent, or an amount equal to 100 percent, of any asset undisclosed or transferred in breach of the fiduciary duty.' (§ 1101, subd. (h).)" (*In re Marriage of Wiese, supra*, 102 Cal.App.5th at p. 932.)

Husband argues the Property was not "undisclosed or transferred" in breach of fiduciary duty or within the meaning of section 1101, subdivision (h).

The community had an interest in the Property and, as wife notes, husband did not disclose this beneficial interest or equitable title, and he supported the transfer of it to sister. Indeed, he promised his sister equity in the home without wife's agreement. Regardless of whether the community's interest was "transferred" in breach of fiduciary duty, we find no error in the court's finding that it was "undisclosed" in breach of that duty. For an asset to be "undisclosed" under section 1101, it is sufficient if the asset is undisclosed to the court. (*In re Marriage of Gutierrez* (2020) 48 Cal.App.5th 877, 882.) This section "create[s] incentives for divorcing parties to be candid with each other *and* the court." (*Ibid*., italics added.) Husband argues he was not obligated to disclose ownership of Property to the court due to the fact he did not hold legal title, and whether the straw buyer agreement was legally binding was a disputed legal question. This argument is unavailing because it depends on an overly narrow interpretation of husband's disclosure obligations and an overly generous interpretation of the facts. Husband was obligated to disclose any asset in which he or the community had or "may" have had an interest. (*In re Marriage of Feldman, supra*, 153 Cal.App.4th at p. 1476.) Not only did he not do that, but the court found he affirmatively misrepresented the state of the facts. Thus, the court found that husband's non-disclosure was not based on any confusion about the enforceability of the straw buyer agreement, but was part of his affirmative efforts to deprive his wife of her interest in the property. In essence, the court found husband's nondisclosure to the court was part of his breach of fiduciary duty.

Husband argues he did not conceal anything from wife about the Property and they "candidly discussed the [P]roperty's disputed status from 2016 throughout this litigation." This argument is also inconsistent with the state of the facts as found by the trial court. Wife argues, consistently with the facts determined by the trial court, that husband conspired with his sister and brother to conceal the true ownership of the Property, and she had no idea the extent of the conspiracy engaged in by husband. Wife further argues that in interpreting section 1101, subdivision (h), we must not construe the words in isolation but look at the entire statutory framework including the duty to disclose set forth in section 1101, subdivision (e). As set forth above, "[t]his duty includes the obligation to make full disclosure to the other spouse of all material facts and information regarding the existence, characterization, and valuation of all assets in which the community has or may have an interest." (§ 1100, subd. (e).) In determining whether a remedy under section 1101, subdivisions (g) or (h) is appropriate we may consider a spouse's failure to disclose material information to the other spouse. (See *In re Marriage of DeSouza* (2020) 54 Cal.App.5th 25, 31, 35 [affirming sanctions under § 1101, subd. (g) where the trial court found husband breached his fiduciary duties to wife when he purchased bitcoins and also when he later failed to inform wife about company's bankruptcy; company's bankruptcy substantially impaired wife's interest in the bitcoins by rendering them inaccessible and potentially worthless].)

"The strong language of section 1101, subdivision (h) serves an important purpose: full disclosure of marital assets is absolutely essential to the trial court in determining the proper dissolution of property and resolving support issues. The statutory scheme for dissolution depends on the parties' full disclosure of all assets so they may be taken into account by the trial court. A failure to make such disclosure is properly subject to the severe sanction of section 1101, subdivision (h)." (*In re Marriage of Rossi, supra*, 90 Cal.App.4th at p. 42.) Husband did not disclose any possible interest in the Property and the court found he misrepresented the relevant facts; thus, the parties

13

ultimately had to litigate the veracity of husband's misrepresentations before the trial court could determine the community's interest in the Property based on the true state of the facts. The trial court concluded husband's conduct was extreme enough to warrant the remedy of awarding wife all of the Property: "[Husband]'s years' long, egregious, oppressive, and fraudulent misconduct toward his wife and young son is intentional. His conduct cannot be explained away as the product of feigned 'confusion' or naivete. [Husband]'s malicious conduct instead shows he clearly, knowingly, actively, and repeatedly colluded and worked in concert with his two siblings to deprive his wife and young children of their sole, exclusive, and valuable asset." Husband has failed to persuade us that, as a matter of law, the Property was not "undisclosed or transferred in breach of the fiduciary duty." (§ 1101, subd. (h).)

Husband further argues section 1101 remedies are not available because wife's interest in the Property was not impaired or detrimentally impacted by his breach of fiduciary duty. The trial court did not make an explicit finding of impairment; nor does it appear that it was asked to. But as the court explained, husband worked over a series of years with his siblings to deprive wife of the Property. This was a deprivation of her interest in the Property. Further, husband agreed his sister could have equity in the Property and the record suggests that in the interim sister refinanced the home and withdrew equity. Husband seems to argue that his behavior did not matter because the dispute with sister would have prevented wife from taking control of her share of the property any sooner. This is not the conclusion the trial court reached from this record. Husband's assertion that we cannot find impairment because his interest in the property was equally harmed is also unpersuasive. Section 1101 does not require that only the claimant spouse's interest be impaired or detrimentally impacted. (See *In re Marriage of Hokanson* (1998) 68 Cal.App.4th 987, 991, 993-994 [spouse breached her fiduciary duties by dilatory conduct in selling house that caused the community to suffer a loss].)

14

Husband argues the record lacks clear and convincing evidence of oppression, fraud, or malice within the meaning of Civil Code section 3294 as required to impose a remedy under section 1101, subdivision (h).

Under Civil Code section 3294, " 'malice' " is defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." (Civ. Code, § 3294, subd. (c)(1).) " 'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." (*Id*., subd. (c)(2).) " 'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." (*Id*., subd. (c)(3).)

The trial court found husband's "years' long, egregious, oppressive, and fraudulent misconduct toward his wife and young sons [wa]s intentional." Further, his "malicious conduct . . . show[ed] he clearly, knowingly, actively, and repeatedly colluded and worked in concert with his two siblings to deprive his wife and young children of their sole, exclusive, and valuable asset." Husband attempts to downplay the trial court's credibility findings by suggesting he "merely testif[ied] in court that he believed that he and [wife] rented from [sister]." Husband falsely testified that his sister lived at the property for a period of time, when even she testified she did not. The trial court found husband also fabricated reasons for various checks that were written to sister. Husband has not identified a permissible basis to disturb the trial court's conclusion that his breach of fiduciary duty involved oppression, fraud, or malice on his part.

15

We affirm the trial court's decision to award wife all of the Property under section 1101, subdivision (h).[3]

## F.     Attorney's Fee Awards

The trial court awarded wife attorney's fees pursuant to sections 271 and 2030. As a threshold matter, it declined to award fees based on the 40 percent contingency fee contract between wife and her attorney because it determined that to do so would be unconscionable. The court found that $335,610 in fees was reasonably incurred by wife's counsel and necessary to litigate the matter. It ordered husband to pay wife $1,500, sister to pay wife $135,000, and husband and sister jointly and severally liable to pay wife $18,340 in need-based attorney's fees pursuant to section 2030. Separately, the court ordered sister to pay wife $100,000, and husband and sister jointly and severally liable to pay wife $100,000 in attorney's fees as a sanction under section 271. Husband and sister challenge each of these awards.

### 1.     Section 2030

We first address the court's award of need-based attorney's fees. Pursuant to section 2030, "[i]n a proceeding for dissolution of marriage . . . , the court shall ensure that each party has access to legal representation . . . to preserve each party's rights by ordering, if necessary based on the income and needs assessments, one party. . . to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary

---

[3] Husband argues the trial court determined the Property was community property but improperly imposed a resulting trust for wife's sole beneficial interest. The court found the Property was community property, that the parties intended the beneficial interest in the Property was to be enjoyed by wife and husband, and ultimately stated wife "is hereby adjudicated the []Property's sole, true, equitable, and beneficial owner because imposing a resulting trust as to the []Property in [wife]'s favor is apt, appropriate, equitable, and just." Husband's argument is moot given that the trial court awarded wife all of the property pursuant to section 1101, subdivision (h), and we have affirmed the award of all of the Property to wife on this basis.

16

for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding." (§ 2030, subd. (a)(1).) Further, "the court shall make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties. If the findings demonstrate disparity in access and ability to pay, the court shall make an order awarding attorney's fees and costs." (§ 2030, subd. (a)(2).)

"Parties to the dissolution proceeding other than spouses can be required to pay under this statute." (*In re Marriage of Wendt & Pullen* (2021) 63 Cal.App.5th 647, 653.) "Any order requiring a party who is not the spouse of another party to the proceeding to pay attorney's fees or costs shall be limited to an amount reasonably necessary to maintain or defend the action on the issues relating to that party." (§ 2030, subd. (d).)

"In assessing a party's relative need and the other party's ability to pay, [the court] is to take into account ' " 'all evidence concerning the parties' current incomes, assets, and abilities.' " ' [Citation.] That a party who is requesting fees and costs has the resources is not, by itself, a bar to an award of part or all of such party's fees. Financial resources are only one factor to consider. [Citation.] The trial court may also consider the other party's trial tactics." (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 975.)

"In summary, the proper legal standard for determining an attorney fee award [under section 2030] requires the trial court to determine how to apportion the cost of the proceedings equitably between the parties under their relative circumstances. [Citation.] In making this determination, the trial court has broad discretion in ruling on a motion for fees and costs; we will not reverse absent a showing that no judge could reasonably have made the order, considering all of the evidence viewed most favorably in support of the order." (*In re Marriage of Falcone & Fyke, supra*, 203 Cal.App.4th at p. 975.) No such showing was made here.

17

Sister argues there was no evidence of a disparity in access to funds or ability to pay, and she is only obligated to pay for issues relating to her. Husband contends the court failed to appropriately consider his financial circumstances when it combined his and sister's resources for purposes of awarding need-based fees under section 2030. These assertions are unavailing.

The attorney's fees pertained to issues that equally applied to both husband and sister. The court discussed each party's resources and expenses and imposed a far greater need-based attorney's fee award payable by sister than by brother. The court ordered husband to pay wife $1,500, sister to pay wife $135,000, and husband and sister jointly and severally liable to pay wife $18,340. The court explained that while husband and wife earned similar incomes, sister earned more than three times that amount and had $178,773 in cash accounts, $198,808 in stocks, bonds, etc., and $60,000 in unidentified other property. The court found wife had no similar cash or assets available to pay attorney's fees and costs. Sister alleged she had previously paid $147,400 in attorney's fees but had no balance outstanding. Meanwhile, husband indicated he incurred only $7,500 in attorney's fees that he had already paid, and he had a $6,000 cash account and $5,000 in other property assets. Husband and sister have not demonstrated any basis to reverse the award of attorney's fees under section 2030.

2.      *Section 271*

We now turn to the court's award of attorney's fees as sanctions under section 271. "Section 271 authorizes an award of attorney fees and costs as a sanction for uncooperative conduct that frustrates settlement and increases litigation costs." (*In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 290.)

Section 271, subdivision (a) provides, "Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which any conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by

18

encouraging cooperation between the parties and attorneys. . . . In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed. In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award." "The policy of the law is to promote settlement and to encourage cooperation which will reduce the cost of litigation. [Citation.] But the sanction must be scaled to the payor's ability to pay and must be made in light of both parties' financial circumstances." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 827-828.)

"We review an award of attorney fees and costs under section 271 for abuse of discretion. [Citation.] 'Accordingly, we will overturn such an order only if, considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order. [Citations.]' [Citation.] We review any factual findings made in connection with the award under the substantial evidence standard." (*In re Marriage of Fong, supra*, 193 Cal.App.4th at p. 291.)

Husband argues the trial court failed to appropriately consider his financial circumstances, including the fact that the Property was awarded to wife, when awarding fees against him ($100,000) under section 271. "It is true that the only stricture imposed by section 271 is that the sanction may not impose an unreasonable financial burden on the party sanctioned. (§ 271, subd. (a).) It follows, therefore, that the party who wishes to contest their ability to pay any sanctions award (both at trial and on appeal) bears the burden to submit evidence or a current income and expense declaration in opposition to the sanctions request and to present their inability to pay argument at the trial court level, with reference to that evidence." (*In re Marriage of Rangell* (2023) 95 Cal.App.5th

1206, 1223.) The trial court noted this rule in its order as well as the fact that husband made no argument that he should not be subject to sanctions under section 271 or that he did not have the ability to pay a sanctions award. Husband argues his expense declaration establishes his inability to pay because it shows $5,000 in average monthly salary and $4,900 in average monthly expenses. We note the record does not reflect that the trial court agreed that husband's claimed expenses were accurate, and they included $3,000 in claimed monthly "rent" for the Property.

Husband further contends the court erred in imposing sanctions against husband and sister jointly and severally because section 271 provides that "the court may base an award of attorney's fees and costs on the extent to which any conduct of *each party* . . . furthers or frustrates the policy of the law to promote settlement of litigation" and requires the court to award attorneys' fees and costs "only from the property or income of the party against whom the sanction is imposed." (§ 271, subds. (a), (c), italics added.) Sister makes a similar argument. We are unpersuaded by either. The court found husband and sister acted in concert and engaged in a "four-year campaign to deprive [wife] of her interest in community property," and clearly disagreed with husband's suggestion that he and sister took "vastly different" approaches during litigation. Rather, the court explained that both husband and sister engaged in conduct that increased litigation and repeatedly misrepresented to the court that the home was a rental property owned by sister. Neither sibling has identified any authority that precludes the imposition of joint and several liability in this circumstance. Sister further argues she was sanctioned for taking a litigation position with which the court disagreed. She also contends there is no evidence she took actions that frustrated settlement. Sister simply disagrees with the trial court's findings. She has identified no basis for us to disturb the court's award.

20

*G.     Attempt to Disqualify Judge*

In February 2024, after the court had issued its statement of decision following trial, sister attempted to disqualify the trial judge under Code of Civil Procedure section 170.6 and file a declaration objecting to the qualifications of the judge under Code of Civil Procedure section 170.1, subdivision (a)(6)(A)(iii).  (See Code Civ. Proc., § 170.1, subd. (a)(6)(A)(iii) ["A person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial"].)  Sister argues the court erred in finding that her motion to disqualify the trial court judge under Code of Civil Procedure section 170.6 was untimely and in striking her Code of Civil Procedure section 170.1 declaration.  This court has already denied a petition for writ of mandate on these issues.  (See *Razaq v. Superior Court*, case No. C100562.)  Further, these issues are only reviewable by petition for writ of mandate.  "This statutory right to impartiality [set forth in section 170.1] is raised through a motion to disqualify an assertedly biased judge (Code Civ. Proc., § 170.6), the resolution of which is reviewable only by writ of mandate (Code Civ. Proc., § 170.3, subd. (d))."  (*People v. Nieves* (2021) 11 Cal.5th 404, 498, fn. 13; accord *People v. Brown* (1993) 6 Cal.4th 322, 333.)  To the extent sister raises a due process challenge to the impartiality of the trial judge based on the judge's adverse credibility findings, we reject it.

21

## III.  DISPOSITION

The September 7, 2023 and April 8, 2024 orders are affirmed.  Respondent Sarah Razaqi shall recover her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


/S/

---
RENNER, J.



We concur:


/S/

---
DUARTE, Acting P. J.


/S/

---
FEINBERG, J.